(September 29, 2005)

■ Pesia Pam Shisgal et al., Appellants, v Eric Brown et al., Respondents. [801 NYS2d 581]—

Order, Supreme Court, New York County (Louis B. York, J.), entered December 17, 2004, which, to the extent appealed from as limited by plaintiffs' brief, dismissed, pursuant to CPLR 3211 (a) (7), the first, second and fourth causes of action asserted in the amended and consolidated complaint, unanimously modified, on the law, the first, second and fourth causes of action reinstated to the extent indicated, and otherwise affirmed, with costs.

The motion court erred in dismissing the claims at issue in their entirety for failure to state a cause of action. When properly reviewed, i.e., the factual allegations presumed to be true, the pleader given the benefit of every favorable inference which may be drawn from the pleading, and supporting affidavits and documentary evidence considered for the limited purpose of determining whether plaintiffs have a cause of action (*see Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *Wall St. Assoc. v Brodsky*, 257 AD2d 526, 526-527 [1999]), it is clear that plaintiff stated claims on several theories.

Plaintiffs successfully pleaded causes of action on the theories that defendants fraudulently induced them to make loans for business purposes and that the loans constituted fraudulent conveyances pursuant to Debtor and Creditor Law §§ 274, 275 and 276. On the former theory, plaintiffs alleged the required elements of common-law fraud—misrepresentation of a material fact, falsity, scienter, deception and injury (*see Channel Master Corp. v Aluminium Ltd. Sales*, 4 NY2d 403, 407 [1958];

*Skillgames, LLC v Brody,* 1 AD3d 247, 250 [2003])—with the required specificity (CPLR 3016 [b]), in stating, among other things, that defendants Bricla and United borrowed money from plaintiffs based on false representations made by defendants' agent/general counsel "that the loans were to be used for working capital or to purchase additional garages"; that such representations "were known by defendants to be false" and "were intended and designed to have plaintiffs rely upon them by lending money, ostensibly to Bricla and United"; that the loans were made with justifiable reliance on defendants' representations; and that the false representations would cause plaintiffs injury unless the loans are repaid.

On the latter theory, plaintiffs alleged that the Brown defendants "have regularly, systematic [*sic*] and massively diverted and used the assets of Bricla, United, Smart Parking and their affiliated corporations for their personal benefit and the benefit of their relatives, friends and associates," such that these conveyances, made without fair consideration, left these business corporations with unreasonably small amounts of property, in violation of Debtor and Creditor Law § 274; that the Browns made these conveyances with the intent or belief that they were incurring debts beyond their ability to pay upon maturity, in violation of Debtor and Creditor Law § 275; and that these conveyances were made with actual intent to defraud creditors, in violation of Debtor and Creditor Law § 276. Although the motion court opined that plaintiffs' allegation as to actual intent to defraud was conclusory, such intent "is ordinarily a question of fact which cannot be resolved on a motion for summary judgment" (*Grumman Aerospace Corp. v Rice,* 199 AD2d 365, 366 [1993]), or, in this case, a motion to dismiss. Plaintiffs' submissions alleged sufficient "badges of fraud" to support such intent, for purposes of a motion to dismiss (*see Wall St. Assoc. v Brodsky,* 257 AD2d 526, 529 [1999], *supra*; *see also Parsons & Whittemore v Abady Luttati Kaiser Saurborn & Mair,* 309 AD2d 665 [2003]).

Plaintiffs support these allegations with substantial documentary evidence, including a prior decision in defendant Smart Parking, Inc.'s bankruptcy proceeding, a prior court decision on plaintiffs' motion attaching defendants' assets, defendant Eric Brown's EBT, and other documentary evidence. These documents contained, among other things, findings or admissions that the Brown defendants formed and controlled Smart Parking, operated the other defendant companies through Smart Parking as a single enterprise without regard to corporate formalities or fiscal structure, commingled virtually all of the

various corporate funds, intermingled their personal funds with the corporate funds, used Bricla as a shell company to borrow money, including plaintiffs' funds, for the benefit of the other corporate defendants, and kept no records of fund transfers between the companies.

The motion court correctly determined that plaintiffs failed to state claims on the theory of fraudulent concealment, since the parties, as mere debtor and creditor, had no fiduciary relationship and no resultant affirmative duty to disclose (*SNS Bank v Citibank*, 7 AD3d 352, 355-356 [2004]), and on the theory of fraudulent conveyance pursuant to Debtor and Creditor Law § 273, which requires allegations that the debtor be rendered insolvent.

Plaintiffs sufficiently state a prima facie case for piercing the corporate veil here.

"Generally . . . piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.

"While complete domination of the corporation is the key to piercing the corporate veil, especially when the owners use the corporation as a mere device to further their personal rather than the corporate business, such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required" (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141-142 [1993] [citations omitted]).

Indicia of a situation warranting veil-piercing include: "(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own" (*Wm. Passalacqua Bldrs., Inc. v Resnick Devs. S., Inc.*, 933 F2d 131, 139 [2d Cir 1991]).

Plaintiffs' allegations, as supported by the submissions noted above, include many of these factors. For example, plaintiffs plead that United and Bricla falsely represented that the loans were to be used for working capital or to purchase additional garages; that the Brown defendants used the companies' money as a personal checking account for their own use and that of friends, relatives and associates, and to pay for expenses such as their mother's plastic surgery, their monthly household bills and parking tickets; that the Browns ran the companies without regard for corporate and bookkeeping formalities; that Bricla and United were undercapitalized; and that the commingling of corporate and personal funds was a regular and continuous practice. Concur—Saxe, J.P., Marlow, Sullivan, Williams and Gonzalez, JJ.