[898 NYS2d 569]

A. PHILIP FONTANETTA et al., Respondents, v JOHN DOE 1 et al., Defendants, and FRANK DiMAIO et al., Appellants.

Second Department, March 30, 2010

## APPEARANCES OF COUNSEL

*Rivkin Radler LLP*, Uniondale (*William M. Savino, Stephen J. Smirti, Jr.* and *Robert J. Aurigema* of counsel), for appellants.
*Ruskin Moscou Faltischek, P.C.*, Uniondale (*Mark S. Mulholland* and *Matthew F. Didora* of counsel), for respondents.

## OPINION OF THE COURT

FLORIO, J.

This is a matter involving the termination of the hospital privileges of the plaintiff A. Philip Fontanetta (hereinafter the plaintiff),[1] at nonparty Winthrop University Hospital (hereinafter the Hospital). The defendants Frank DiMaio (hereinafter Dr. DiMaio), Glenn Teplitz (hereinafter Dr. Teplitz), and Winthrop Orthopaedic Associates, P.C. (hereinafter collectively the defendants), claim that the plaintiff's privileges were terminated following a peer review process within the meaning of the Health Care Quality Improvement Act of 1986 (42 USC § 11101 *et seq.* [hereinafter HCQIA]), which immunizes healthcare participants from civil liability for their actions in that process. The defendants assert that the substance of this lawsuit is to recover damages from them for their actions in the course of that peer review process. They contend that the action should be dismissed because the "documentary evidence" they submitted in support of that branch of their motion which was to dismiss the complaint pursuant to CPLR 3211 (a) (1) shows that, as a matter of law, such a peer review process took place.

---

1. Western Nassau Orthopaedic Associates, P.C., also is a named plaintiff in this action and appears to be the plaintiff's private medical practice. It will not be referred to further herein.

Inasmuch as we find that the defendants' submissions, with the possibility of one inconsequential exception, do not qualify as "documentary evidence" within the intendment of CPLR 3211 (a) (1), we affirm the Supreme Court's determination denying that branch of the motion.

## Background

The plaintiff is a board-certified orthopaedic surgeon who has practiced in and around Nassau County for more than 30 years. From 1980 to 2005 he had continuous and unrestricted admitting privileges at the Hospital.

Dr. DiMaio is Chairman of the Department of Orthopaedic Surgery at the Hospital (hereinafter the Department). Dr. Teplitz is a member of the Hospital's Department of Orthopaedic Surgery and served on the Department's Continuous Quality Improvement Committee (hereinafter the CQI Committee). Both individual defendants are shareholders of the defendant corporation Winthrop Orthopaedic Associates, P.C.

Beginning in December 2004, after the plaintiff handled several cases with adverse results, the Hospital's Risk Management Department referred five of the plaintiff's cases to the CQI Committee. These cases were discussed during four CQI Committee meetings held on February 18, 2005, March 25, 2005, May 20, 2005, and June 17, 2005. The plaintiff attended only the May 20, 2005 meeting. Following each meeting, minutes which included a discussion of the plaintiff's cases and recommendations of the CQI Committee were generated and printed. The minutes were then individually submitted to Dr. DiMaio, as Chair of the Department, for review.

Upon completion of the CQI Committee process, Dr. DiMaio and the Hospital administration contended that they took various measures to bring the plaintiff into compliance with Hospital procedures, including: sending a letter to the plaintiff from Dr. DiMaio, dated April 15, 2005, regarding his alleged failure to abide by hospital protocol for site verification; sending a letter to the plaintiff from the Hospital dated June 17, 2005, informing him that his charts would be subject to random reviews for the following three months; and conducting meetings between the Hospital and Dr. DiMaio, which resulted in the implementation of a proposed proctorship whereby the plaintiff was required to be supervised by a credentialed spine surgeon for a minimum of 10 surgeries.

In August 2005 the plaintiff met twice with Dr. DiMaio and Hospital administration personnel, who gave him an op-

portunity to respond to these issues and to address the Hospital's concerns. At the second meeting, the plaintiff admitted that he was unwilling to comply with the Hospital's suggestions. It also appears that a suspension was discussed.

By letter dated August 26, 2005, the Hospital notified the plaintiff of its decision to suspend his admitting privileges. It also informed him of his right to request a hearing before an Ad Hoc Committee, which he did on September 1, 2005.

By notice of hearing dated October 3, 2005, the Hospital informed the plaintiff that its decision to summarily suspend him and its recommendation for nonrenewal of his privileges were based on: (a) the five cases reviewed by the CQI Committee; (b) his deliberate refusal to follow Hospital protocol for site verification; (c) his inadequate compliance with conditions imposed requiring proctoring of spinal surgeries; and (d) his failure to properly document medical records. In addition, the notice of hearing also set forth the plaintiff's rights with regard to the hearing, including his right to: (a) be accompanied and/or represented by an attorney or another person of the plaintiff's choice; (b) call, examine, and cross-examine witnesses; (c) present evidence determined to be relevant by the hearing panel, regardless of its admissibility in a court of law; (d) challenge any witnesses, and rebut any evidence; and (e) submit a written statement at the close of the hearing.

The Ad Hoc Committee consisted of five physicians and met a total of seven times from May 23, 2006 through February 21, 2007.

Although not unanimous in its decision, in a letter dated May 14, 2007, the Ad Hoc Committee recommended that the plaintiff's privileges be reinstated. Two additional levels of review followed, first, one by the Executive Committee of the Medical Staff (hereinafter the Executive Committee) and then, a second by the Appellate Review Committee (a committee appointed by the Hospital's Board of Directors). Both the plaintiff and the Hospital submitted briefs in support of their positions and, at the Appellate Review Committee level, they both presented oral arguments.

The Executive Committee upheld the Hospital's original suspension of the plaintiff and its refusal to renew the plaintiff's privileges, rejected the Ad Hoc Committee's recommendation, and instead recommended that "his non-reappointment stand." That determination of the Executive Committee was later upheld by the Hospital's Appellate Review Committee. In a meet-

ing on September 11, 2007 the Hospital's Board of Directors adopted the recommendation to terminate the plaintiff's privileges.

## This Action

The complaint asserts six causes of action. The first, sounding in common-law unfair competition, alleged that the defendants abused their full-time privileges at the Hospital by hoarding Hospital resources and filing false reports in order to malign and defame the plaintiff. The second cause of action alleged tortious interference with contract and asserted that the plaintiff's admitting privileges constituted a contract between the plaintiff and the Hospital, and that the plaintiff's contractual privileges were wrongfully suspended due to the defendants' illegal acts, false and defamatory reports, and wanton abuse of authority, position, and power. The third cause of action alleged tortious interference with a business advantage, averring that the defendants knowingly and intentionally interfered with the business relationship between the plaintiff and the Hospital. The fourth and fifth causes of action were to impose a constructive trust and to recover damages for unjust enrichment, respectively. The plaintiff claimed that the defendants had a fiduciary relationship with the Hospital and the plaintiff based on a "position of trust" held by the defendants at the Hospital, and that the defendants abused this fiduciary relationship. The sixth cause of action to recover damages for defamation alleged that the defendants caused false statements about the plaintiff to be published in the National Practitioner Data Bank.

It appears that all six causes of action encompass more than claims that are based solely on the peer review process. Those allegations, broadly construed in favor of the plaintiff, as they should be on a motion to dismiss, appear to allege a malevolent conspiracy as well as actions outside of the peer review process directed at the plaintiff.

On November 30, 2007 the defendants moved, inter alia, to dismiss the complaint pursuant to CPLR 3211 (a) (1) based on "documentary evidence." They argued, among other things, that the plaintiff's privileges were terminated after he "engaged in a dangerous trend of substandard patient care," and that they were immunized from liability by the HCQIA and New York State Public Health Law § 2805-m (3) because the Hospital's decision to terminate the plaintiff's privileges "was reasonable and in furtherance of quality health care." In sup-

port of their motion, the defendants submitted the following items, asserting that they constituted "documentary evidence" within the intendment of CPLR 3211 (a) (1): a completely redacted quality improvement morbidity report (written conclusions of the CQI Committee reviews); a memorandum from Monica Santoro of the Hospital's Risk Management Department to Barbara Kohart-Kleine, a vice-president of the Hospital administration, regarding the plaintiff's cases that were being reviewed by that Department; five sets of minutes from quality improvement meetings (the minutes of the CQI Committee meetings); a report from New York Patient Occurrence Report and Tracking System; a report from NYPORTS.net; excerpts of testimony from medical staff hearings; five excerpts of minutes from the Ad Hoc Committee Hearings; attendance sheets from CQI Committee meetings; a chart review; a copy of an e-mail correspondence between Barbara Vallone, R.N., and Dr. Teplitz discussing the plaintiff's failure to follow Hospital protocol; a transcript of the proceedings held before the Appellate Review Board; minutes from an Executive Committee meeting; minutes from a Board of Directors' executive session; minutes from the Appellate Review Committee meeting; and eight letters either from or to the plaintiff, Dr. DiMaio, or the Hospital administration discussing the plaintiff's cases, his failure to follow Hospital protocol, or his suspension (hereinafter collectively the defendants' printed materials).

Both before the Supreme Court and at oral argument in this Court, the defendants limited the scope of that branch of their motion which was to dismiss the complaint to one pursuant to CPLR 3211 (a) (1), relying solely on the above-mentioned alleged "documentary evidence," and *declined* to rely on any other paragraph of CPLR 3211 (a). Nor did they argue that their application should be treated as a motion for summary judgment under CPLR 3211 (c). In its order entered April 2, 2008 the Supreme Court denied that branch of the defendants' motion which was to dismiss the complaint, finding that the proof relied upon by them was not "documentary evidence" (2008 NY Slip Op 30966[U], *9). We agree.

## Discussion

A motion to dismiss pursuant to CPLR 3211 (a) (1) will be granted only if the "documentary evidence resolves all factual issues as a matter of law, and conclusively disposes of the plaintiff's claim" (*Fortis Fin. Servs. v Fimat Futures USA*, 290

AD2d 383, 383 [2002] [internal quotation marks omitted]; *see Leon v Martinez*, 84 NY2d 83, 88 [1994]; *Martin v New York Hosp. Med. Ctr. of Queens*, 34 AD3d 650 [2006]; *Berger v Temple Beth-El of Great Neck*, 303 AD2d 346, 347 [2003]). "[I]f the court does not find [their] submissions 'documentary', it will have to deny the motion" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:10, at 22). Since the printed materials relied on by the defendants do not qualify as such,[2] we affirm the denial of that branch of the defendants' motion which was to dismiss the complaint pursuant to CPLR 3211 (a) (1).

## The History and Development of CPLR 3211 (a) (1)

CPLR 3211, including subdivision (a) (1),[3] appears to have had its genesis in the 1957 First Preliminary Report of the Advisory Committee on Practice and Procedure (1957 NY Legis Doc No. 6 [b] [hereinafter the Report]). According to that Report, the purpose of CPLR 3211 (a) (5) was to cover the most common affirmative defenses founded upon documentary evidence, specifically, estoppel, arbitration and award, and discharge in bankruptcy, whereas section 3211 (a) (1) was enacted to "cover all others that may arise as for example, a written modification or any defense based on the terms of a written contract" (*id.* at 85). To some extent, "documentary evidence" is a "fuzzy" term, and what is documentary evidence for one purpose might not be documentary evidence for another.[4]

As Professor Siegel has noted in his commentary to CPLR 3211, there is "a paucity of case law" as to what is considered " 'documentary' under [CPLR 3211 (a) (1)]" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:10, at 21-22). From the cases that exist, it is clear that judicial records, as well as documents reflecting out-of-court transactions such as mortgages, deeds, contracts, and any other

**2.** The printed materials submitted by the defendants do not qualify as documentary evidence, with the possible exception of the attendance sheets, which are clearly insufficient to resolve all factual issues.

**3.** CPLR 3211 (a): "A party may move for judgment dismissing one or more causes of action asserted against him on the ground that: 1. a defense is founded upon documentary evidence."

**4.** (*See e.g. Cherfas v Wolf*, 17 Misc 3d 1102[A], 2007 NY Slip Op 51802[U], *4-5 [2007] [where the Supreme Court held an insurance company's audit report to be "documentary evidence" in an action to set aside a divorce settlement agreement for alleged fraud. The third party's audit report was not contested, and was deemed documentary for the purposes of showing what the plaintiff did versus what someone else did].)

papers, the contents of which are "essentially undeniable," would qualify as "documentary evidence" in the proper case (*id.*; *see* 2 Commercial Litigation in New York State Courts § 7:60 [3 West's NY Prac Series 2d ed]). For example, in *Matter of Casamassima v Casamassima* (30 AD3d 596 [2006]), this Court held that a trust agreement qualified as "documentary evidence" in a dispute between cotrustees.

In *Bronxville Knolls v Webster Town Ctr. Partnership* (221 AD2d 248 [1995]), the Appellate Division, First Department, found that an integrated mortgage and note, which unambiguously made the property itself the plaintiffs' sole recourse, constituted "documentary evidence." In *Crepin v Fogarty* (59 AD3d 837, 839 [2009]), the Appellate Division, Third Department, found that a deed qualified as "documentary evidence" where it conclusively established the validity of the disputed easement.

Along the same lines, in *150 Broadway N.Y. Assoc., L.P. v Bodner* (14 AD3d 1, 7 [2004]), the Appellate Division, First Department, found that a lease which unambiguously contradicted the allegations supporting the plaintiff's cause of action alleging breach of contract constituted "documentary evidence" under CPLR 3211 (a) (1). The Court noted that this lease represented a clear and complete written agreement between sophisticated, counseled business people negotiating at arm's length (*id.* at 8). Relying on the same reasoning, the Appellate Division, Third Department, in *Ozdemir. v Caithness Corp.* (285 AD2d 961 [2001]), held that a contract constituted "documentary evidence" in a dispute regarding the payment of a finder's fee.

On the other hand, the case law is somewhat more abundant as to what is not "documentary evidence." As this Court held in *Berger v Temple Beth-El of Great Neck* (303 AD2d 346, 347 [2003]), affidavits are not documentary evidence (to the same effect, *see Tsimerman v Janoff*, 40 AD3d 242 [1st Dept 2007], and Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:10). In *Weil, Gotshal & Manges, LLP v Fashion Boutique of Short Hills, Inc.* (10 AD3d 267, 271 [2004]), the Appellate Division, First Department, reversed the trial court's dismissal pursuant to CPLR 3211 (a) (1), finding that e-mails and deposition and trial testimony were not the types of documents contemplated by the Legislature when it enacted this provision.

In *Frenchman v Queller, Fisher, Dienst, Serrins, Washor & Kool, LLP* (24 Misc 3d 486, 495 n 2 [2009]), the Supreme Court,

New York County, held that affidavits and letters did not constitute documentary evidence under CPLR 3211 (a) (1) so as to prove that a lawyer-client relationship had been terminated. Also, in *Holman v City of New York* (19 Misc 3d 600, 602 [2008]), the Supreme Court, Kings County, found that medical records containing the notes of a doctor were not "documentary evidence," as they raised issues of credibility that are for a jury to decide.

Similarly, in *Webster v State of New York* (2003 NY Slip Op 50590[U], \*5 [2003]), the Court of Claims held that records maintained by the New York State and United States Departments of Transportation, which provided detailed information about the railroad crossing at issue, were not "documents" within the meaning of CPLR 3211 (a) (1). The court reasoned that those records contain information in a summary form and, thus, are not "essentially undeniable."

In sum, to be considered "documentary," evidence must be unambiguous and of undisputed authenticity (*see* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:10, at 21-22).

It must be pointed out that some of the confusion as to what constitutes documentary evidence pursuant to CPLR 3211 (a) (1) stems from the fact that various courts appear to refer to any printed materials as "documentary evidence," particularly in cases *not* involving CPLR 3211 (a) (1). For example, in *Gray v South Colonie Cent. School Dist.* (64 AD3d 1125 [2009]), the Appellate Division, Third Department, referred to deposition testimony as "documentary evidence" in discussing a motion for summary judgment. In addressing a motion to change venue in *Garced v Clinton Arms Assoc.* (58 AD3d 506, 509 [2009]), the Appellate Division, First Department, referred to affidavits as "documentary evidence." However, it is clear that affidavits and deposition testimony are not "documentary evidence" within the intendment of a CPLR 3211 (a) (1) motion to dismiss.

### The Instant Motion

The essence of the defendants' contentions, both in their briefs and at oral argument, is the following: first, that their (alleged) "documentary evidence," i.e., the defendants' printed materials, demonstrates that a peer review process (as defined by the HCQIA) took place; second, a review of the complaint shows that the claims are all based on the allegedly wrongful termination of the hospital privileges of the individual plaintiff

for not providing quality medical care; and, third, under the HCQIA, the defendants have a presumption of immunity for claims resulting from their participation in a peer review process. They maintain that this established the necessary prerequisites for the presumption to apply, and the burden has, therefore, shifted to the plaintiff to demonstrate why the complaint should not be dismissed or, at least, to show the existence of a factual question on that issue. The defendants argue that the plaintiff did not make that showing. Thus, based on the printed materials the defendants submitted, they were entitled to dismissal of the complaint.

We reject the defendants' position. Their printed materials (with the above-noted possible exception of the clearly insufficient attendance reports) can best be characterized as letters, summaries, opinions, and/or conclusions of the defendants and/or the Hospital's agents and employees. They clearly do not reflect an out-of-court transaction and are not "essentially undeniable" (see Siegel, Practice Commentaries, McKinney's Cons Law of NY, Book 7B, CPLR C3211:10, at 22). Thus, they are not "documentary evidence" within the intendment of CPLR 3211 (a) (1).

Since the defendants' printed materials were not "documentary evidence" and they made this motion exclusively under CPLR 3211 (a) (1), their submissions were insufficient as a matter of law to grant their motion. In light of that determination, we need not address the parties' remaining contentions.

We also reject the defendants' position at oral argument, i.e., that the policy considerations underlying the immunity granted to them by the HCQIA mandate that this matter be decided by their section 3211 (a) (1) motion to dismiss, without requiring them to wait and make a summary judgment motion.

Pursuant to CPLR 3211 (c),[5] a party can have its motion treated as one for summary judgment (even prior to joinder) either by charting a summary judgment course or by requesting

---

**5.** "Rule 3211. Motion to dismiss . . .

"(c) Evidence permitted; immediate trial; motion treated as one for summary judgment. Upon the hearing of a motion made under subdivision (a) or (b), either party may submit any evidence that could properly be considered on a motion for summary judgment. Whether or not issue has been joined, the court, after adequate notice to the parties, may treat the motion as a motion for summary judgment. The court may, when appropriate for the expeditious disposition of the controversy, order immediate trial of the issues raised on the motion."

such treatment. Thus, had the defendants truly desired an expedited determination, they could have first moved to dismiss pursuant to CPLR 3211 (a) and then requested that the court convert that motion to one for summary judgment under CPLR 3211 (c) prior to serving an answer, since all of the papers they chose to rely on were available prior to the commencement of this action (*see Mihlovan v Grozavu*, 72 NY2d 506, 508 [1988]; *Yule v New York Chiropractic Coll.*, 43 AD3d 540, 541 [2007]; *Bowes v Healy*, 40 AD3d 566 [2007]; *Love v Morrow & Co.*, 193 AD2d 586 [1993]). Alternatively, the defendants could have answered and then moved for summary judgment pursuant to CPLR 3212 without waiting for any discovery.

Instead, they chose this narrowly circumscribed and focused motion pursuant to CPLR 3211 (a) (1), and thereby charted their own course. As such, they should not be heard to complain about the consequences thereof (*see Nishman v De Marco*, 62 NY2d 926, 929 [1984]; *Nissequogue Boat Club v State of New York*, 14 AD3d 542, 544-545 [2005]; *Manning v Brookhaven Mem. Hosp. Med. Ctr.*, 11 AD3d 518, 522 [2004]). Accordingly, the order is affirmed insofar as appealed from.

FISHER, J.P., COVELLO and DICKERSON, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.