Time Equities, Inc. and REINVEST, Plaintiffs,

against
Naeringsbygg 1 Norge III AS and KOMMERSIELLA FASTIGHETER IN NY 3 Corp, Defendants.


651906/2015

O. Peter Sherwood, J.

This motion of defendants, Naeringsbygg 1 Norge III AS (NBNIII) and Kommersiella Fastigheter In NY 3 Corp (KFS), to dismiss the complaint (motion sequence number 001) is granted for the reasons discussed here. The facts are taken from the complaint, except as noted. 
I. FACTS
NBNIII is a Norwegian company based in Oslo, Norway. KFS is a New York single 
purpose entity which is a wholly owned subsidiary of NBNIII. KFS owns a 72.8% interest in 44 Wall Street LLC (44 Wall). 44 Wall owns 100% of 44 Wall Owner, LLC (44 Wall Owner), which owns the property located at 44 Wall Street, New York, New York (the Property). KFS also owns a 100% interest in New 44 Wall Street, LLC (New 44 Wall). The minority members of 44 Wall are non-parties SBE 44 Wall, LLC (with 12.2% interest) and Baruch 44 Wall, LLC (with 9.6% interest). There 
are ongoing disputes about the management of the Property, the minority interest holders' failure to pay capital calls, and 
a squeeze out merger of 44 Wall into New 44 Wall, which resulted in elimination 
of the interests of the minority members in 44 Wall. KFS also initiated an appraisal proceeding in 2012, after the squeeze out merger resulted in the offer of nothing for the minority members. 
That proceeding is still pending.
Plaintiff Time Equities, Inc. (TEI) is a New York corporation which owns, develops and manages real estate in the United States, Canada, and Europe. Plaintiff REInvest Capital SA (Reinvest) is an investment company based in Geneva, Switzerland. TEI and Reinvest formed a partnership to acquire the interests of NBNIII and KFS in 44 Wall and New 44 Wall, and through them, 44 Wall Owner and the Property (the Interests). 
In 2014, the parties began discussing a transaction in which plaintiffs would purchase defendants' Interests. Plaintiffs reviewed the ongoing litigation and decided to proceed, pending certain contingencies related to the minority interests. A letter agreement was countersigned by NBNIII on March 8, 2015 (the Agreement, or the LOI). According to the Agreement, plaintiffs 
were given 90 days for due diligence and to determine whether the minority interests could be obtained [*2]on acceptable terms. During that period, plaintiffs 
had the right to purchase the property before any other prospective purchaser (although, after 60 days, the defendants 
were free to market the Property). If the plaintiffs wished to proceed, the 
parties would then negotiate a full purchase agreement by which the plaintiffs 
would purchase the Interests for $ 4.5 million. Plaintiffs claim they were bound 
by the Agreement to purchase the Interests, but could withdraw from the deal under certain circumstances. 
On April 30, 2015, plaintiffs informed defendants by e-mail of plaintiffs' decision to proceed with the purchase. Defendants did not respond until May 8, when defendants stated they would entertain other offers, and declined to close on the terms 
provided for in the Agreement. Plaintiffs believe the defendants offered to sell the Interests to another entity, but that the sale has not yet occurred. Plaintiffs then 
commenced this suit claiming breach of contract and violation of the covenant of good faith and fair dealing. Each 
of the four causes of action seeks specific performance of the transaction. Defendants move to dismiss 
the entire complaint.
II. DISCUSSION
Defendants move to dismiss NBNIII pursuant to CPLR 3211(a)(8), claiming a lack of personal jurisdiction and proper service, and pursuant to CPLR 327, asserting forum non conveniens. Defendants 
also move to dismiss KFS pursuant to CPLR 3211(a)(7), for failure to state a claim, and CPLR 3211(a)(4), on the basis of contradictory and dispositive documentary evidence.
A. As to NBNIII
Defendants seek dismissal of the complaint as against NBNIII, pursuant to CPLR 3211 (a) (8), claiming that the court does not have personal jurisdiction over it. Plaintiffs, as the parties asserting jurisdiction, bear the burden of establishing that this court has jurisdiction (see Copp v Ramirez, 62 AD3d 23, 28 [1st Dept 2009], lv denied 12 NY3d 711 [2009]). However, "[t]o successfully oppose a motion to dismiss pursuant to CPLR 3211 (a) (8) on the ground that discovery on the issue of personal jurisdiction is necessary, the plaintiff [does] not need to make a prima facie showing of jurisdiction, but instead only need[s] to set forth 
'a sufficient start, and [show its] position not to be frivolous'" (College v Brady, 84 AD3d 1322, 1323 [2d Dept 2011, quoting Petersen v Spartan Indus., 33 NY2d 463, 467 [1974]; see American BankNote Corp. v Daniele, 45 AD3d 338, 340 [1st Dept 2007]). 
While jurisdiction over KFS is not at issue, it is undisputed that neither the general jurisdiction statute, CPLR 301, nor the long-arm jurisdiction statute, CPLR 302, provides direct jurisdiction Norway 
based NBNIII. Plaintiffs' claim for jurisdiction over NBNIII is premised solely on the theory that 
defendants are alter egos and the veil between them should be pierced.
1. Choice of Law
Defendants argue that Norwegian law, rather than New York law, should be applied to the question of veil piercing, as NBNIII is a Norwegian entity, and the "law of the state of incorporation determines when the corporate form will be disregarded" (Reply at 3, quoting Jonas v Estate of Leven, 2015 WL 4522763, *13 [SDNY 2015][internal citations omitted]). Defendants also point to plaintiff Reinvest's willingness to accept a term in a prior letter of intent [*3]regarding a similar transaction which provided that litigation regarding that letter of intent occur in Norway. Defendants claim that Norwegian law allows the corporate veil to be pierced only in extraordinary circumstances, noting that they have found only two cases where the question of piercing the veil was raised, and no instance where the veil was actually pierced (see Reply at 4; citing Kingdom 5-KR-41, Ltd. V Star Cruises, PLC, 
2003 WL 262507, *4 [SDNY Feb. 7, 2003]["Generally, the concept of corporate veil 
piercing is not recognized under Norwegian law"]; Affidavit of Einar Casperson, 
NYSCEF Doc. No. 51 ¶11 [opining that, under Norwegian law, courts cannot premise 
jurisdiction over a foreign defendant on its status as the alter ego of a 
domestic entity]). Defendants failed, however, to include a copy of the law in their filings.
To determine choice of law issues, New York applies the "paramount interest" test. 
The test consists of "an examination of the contacts which [the jurisdictions] have with this controversy for the purpose of determining which of those jurisdictions has the paramount interest in the application of its law. As [the Court of Appeals] noted in Dym v Gordon, (16 NY2d 120, 124 [1965]), this process requires us 
'first to isolate the issue, next to identify the policies embraced in the laws in conflict, and finally to examine the contacts of the respective jurisdictions to ascertain which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied.'" (In re Crichton's Estate, 20 NY2d 124, 133 [1967]). In the veil piercing context, the paramount interest test ordinarily finds that the "[s]tate of incorporation has the greatest interest in determining the extent of insulation that will be afforded to shareholders of corporations incorporated under its laws" (Sweeney, Cohn, Stahl & Vaccaro v Kane, 6 AD3d 72, 75 [2d Dept 2004]). 
As defendants failed to submit the text of the relevant law, this court cannot consider or apply it. As the transaction does involve a New York entity and New York real estate, New York has significant interest, and New York law will be applied. 
2. Piercing the Corporate Veil
New York law disfavors disregard of the corporate form. "Generally, . . . piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury" (Morris v New York State Dept. of Taxation and Fin., 82 NY2d 135, 141 [1993]).
Plaintiffs allege that NBNIII and KFS were "operated as part of a single corporate enterprise" that included NBNIII's parent companies, Naeringsbygg Holding II AS and Kommersiella Fastigheter III AB, which together controlled the board of directors which controlled NBNIII and its subsidiaries (the Scandinavian Board") (Opp at 7). Plaintiffs claim that the Scandinavian Board controlled both NBNIII and KFS through an entity called Obligo Investment Management AS, which was the fund manager of NBNIII and asset manager of KFS (see id., Medeiros Aff, ¶ 32, Elliott Deposition Transcript, attached as Exhibit P to Medeiros Aff, 22:3-23:13). Paul Elliott, president of KFS and Obligo employee, testified in his deposition in a related case that the "ultimate governing authority" for KFS 
is the Scandinavian Board (Elliott Dep Tr, 31:24-32:5). He stated that KFS's board could make recommendations, but the decisions 
are made "back in Norway and Sweden" (Opp at 8, Elliott Dep Tr, 31:24- 32:12). Defense counsel has admitted in a related litigation that KFS's "activities were overseen and managed by Scandinavian entities" (id., Davida S. Scher Affirmation dated July 30, 2014, attached as Exhibit [*4]T to Medeiros Aff, ¶ 22). Plaintiffs describe a web of mostly Scandinavian entities with overlapping boards of directors (see Opp at 8-9). Plaintiffs claim that the Agreement was approved by the Scandinavian Board, rather than KFS or its board of directors, and point to the Scandinavian Board's ability to act through NBNIII to authorize the due diligence described in the Agreement and to get KFS's lawyer, Ms. Scher, to meet with the plaintiffs so they could perform the due diligence, as evidence that the companies are alter egos (see id. at 9). 
Negotiations over the Agreement were largely handled for defendants by Rickard P. Olander, Obligo's Senior Director, who represented to the plaintiffs that he had the authority to bind KFS to sell the Interests (see id. at 10, Complaint, ¶ ¶ 15, 17-18). Paul Elliott, president of KFS, was not involved (see id. at 12, citing Olander emails and Elliott Dep. Tr., attached as Exhibits O-Q to Medeiros Aff, Elliott Aff ¶ 22). The Agreement was signed by Christer Wennersten, Chairman of NBNIII, a former director of KFS, and a member of the Scandinavian Board (see Opp at 10; Exhibit S to the Medeiros Aff; Elliott Dep at 276:14-277:8) 
on behalf of NBNIII (Def. Mem. at 9; Medeiros Aff, Exhibit H). Wennersten has not denied having the authority to 
bind KFS to sell the Interests (see Opp at 10; Wennersten Aff). Nor has Elliott (Opp at 10). Plaintiffs argue that the very fact that such an Agreement, which bound KFS to a subsequent possible transfer 
of 44 Wall and New 44 Wall, was voted on by the Scandinavian Board and signed by 
NBNIII shows that the entities are alter egos. KFS did not contest NBNIII's 
ability to cause a sale of the Interests.
Plaintiffs also point to other events illustrating disregard for the barriers between corporate entities. In a prior attempted transaction relating to a June 23, 2014 letter of intent (the 2014 LOI), Naeringsbygg Holding III AS represented that it had complete ownership of the Interests, and that payment for the sale of the interests would be made to that entity, rather than to KFS (see Opp at 11; Agreement, attached as Exhibit A to Meideros Aff). In discussions related to the 44 Wall Street mortgage, Obligo acknowledged controlling 44 Wall (see id., citing Olander email to Eggesbo and Mendez de Vigo dated July 27, 2014, attached as Exhibit AA to Medeiros Aff). The Amended and Restated Limited Liability Agreement of 44 Wall is signed not by member KFS, but by KFS-Sweden, a different entity, which was controlled by the Scandinavian Board (see Excerpts from Amended and Restated Limited Liability Company Agreement of 44 Wall Street, LLC, attached as Exhibit V to Medeiros Aff, Elliott Dep 32:13-33:9). Plaintiffs allege that Elliott was appointed president of KFS by Obligo, by whom he was employed, and that he took instruction from NBNIII and the Scandinavian Board for his work at KFS (see Opp at 13). Other allegations supporting the conclusion that the corporate form was not respected include 1) that various books and records of KFS are not maintained by that entity, but are in the custody of entities in Scandinavia, that KFS was undercapitalized, 2) that KFS's board of directors was not fully populated, and 3) that NBNIII's organizational chart shows NBNIII as owning 44 Wall, disregarding the existence of KFS (see id. at 14-16).
Plaintiffs claim that NBNIII and the Scandinavian Board completely dominated KFS. For example, Defendants rely on Huxley Barter Corp v Considar, Inc. (627 NYS2d 639 [1st Dept 1995]), noting that court declined to pierce the veil "where the parent company did not maintain operational control of the subsidiary and did not select the subsidiary's personnel" (Reply at 9). Here, NBNIII and the Scandinavian Board are alleged to have done just that, and documents are provided in support. To satisfy the requirement of inequity or malfeasance, plaintiffs rely on their allegations that the defendants are now attempting to use the fictional barrier between the [*5]two defendant entities as an excuse to avoid their obligations pursuant to the Agreement.
Defendants argue that plaintiffs have failed to sufficiently allege that the domination resulted in a fraud against the plaintiffs (see Reply at 6, citing TNS Holdings, Inc. v MKI Sec. Corp., 92 NY2d 335, 339 [1998]). Defendants concede that corporate dissolution and diversion of assets would satisfy the criteria for veil-piercing, but point out that neither is asserted here, and that parents and subsidiaries may have common management, employees, and directors, among other items in common (see Reply at 7, citing Warte v Schoenback, 2010 WL 4456955 [SDNY Oct. 29, 2010]).
In this case, plaintiffs are asserting an alter ego theory in order to establish jurisdiction of the New York courts over a foreign holding company that is outside the jurisdiction of this court. In pursuit of this end, and to avoid having to assert their claims before the courts of Norway, plaintiffs, two sophisticated well-counseled international entities, would have the court entertain a veil piercing claim against an absent Norwegian parent company (NBNIII) and its New York subsidiary (KFS). KFS, which is not a party to the contract plaintiffs allege was breached, is a single purpose vehicle with 44 Wall as its only significant asset 
(Elliott Aff, ¶ 13; Transcript of Oral Argument, p. 13). This structure is well known to TEI as TEI uses it to hold and manage commercial properties that TEI owns.
"Those seeking to pierce a corporate veil . . . bear a heavy burden of showing that the corporation was dominated as to the transaction attacked and that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences" (TNS Holdings v MKL Sec. Corp., 92 NY2d 335, 339 [1998]). Unlike the circumstances in Shisgal v Brown, 21 AD3d 845, 849 (1st Dept 2005) on which plaintiffs rely (see Opp. at 6 and transcript of oral argument on this motion, p. 25), this is not a case in which the corporate form is alleged to have been employed to perpetuate a wrong. In Shisgal, the facts alleged as warranting veil-piercing were:

 that United and Bricla falsely represented that the loans were to be used for working capital or to purchase additional garages; that the Brown defendants used the companies' money as a personal checking account for their own use and that surgery, their monthly household bills and parking tickets; that the Browns ran the companies without regard for corporate and bookkeeping formalities; that Brikla and United were undercapitalized; and that the commingling of corporate and personal funds was a regular and continuous practice.

The plaintiff in Shisgal alleged many of the indicia which support piercing the veil (see Passalacque Builders v Resnick Devs. S., 933 F2d 131, 139 [2nd Cir 1991]). Here, plaintiffs have alleged several indicia of domination and control, including that NBNIII and KFS shared board members, that the Scandinavian Board ruled both entities as a single enterprise, that NBNIII portrayed itself as having control over the Interest, that an agreement establishing KFS as a member of 44 Wall was signed by a Scandinavian entity, that the president of KFS was also employed by another related entity, that another related entity had represented itself as controlling KFS, that an amendment to the 44 Wall LLC agreement instructed notices to be sent to KFS care of two different entities in Norway, that the responsibilities of KFS's officers were limited, that the minutes, directors' resolutions, and other corporate documents were kept in Norway or Sweden, and not in KFS's control, and that KFS was under capitalized in that KFS had only enough resources to buy the property, and not enough to cover the mortgage and other expenses [*6](see Opp at 7-15). Plaintiffs further allege NBNIII and other related entities guaranteed the mortgage on 44 Wall Street (see id. at 16). 
However, unlike the claim in Shisgal, none of allegations show domination of KFS by NBNIII with respect to a transaction being attacked (see TNS Holdings, 92 NY2d at 339). It is not alleged that NBNIII used its influence over KFS to induce KFS to take any actions related to the Agreement at issue. The Agreement was signed on behalf of NBNIII and presumably is binding on NBNIII itself. KFS is not a party to the Agreement. Although plaintiffs have alleged several indicia of domination and control, by NBNIII over KFS, plaintiffs have failed to allege that the domination and control was with respect to any rights plaintiff may have under the terms of the Agreement. For example, plaintiffs have alleged that KFS was undercapitalized but assuming the truth thereof, it would have no effect on plaintiffs. There is no privity between plaintiffs and KFS. Further, the contract was signed by the deep pocketed parent, not the purportedly undercapitalized subsidiary. Any judgment would be enforceable against plaintiffs' counter-party, not KFS.
The fact is, plaintiffs may pursue their claims directly against NBNIII, its counter-party to the Agreement, and obtain a complete remedy. They merely cannot do so in this court. The claim should be brought in Norway, or in another jurisdiction where NBNIII is present.
Additionally, while there are allegations regarding domination and control of KFS by NBNIII and the Scandinavian Board, New York courts reject veil-piercing allegations that are "unaccompanied by allegations of consequent wrongs" (Cobalt Partners, L.P. v GSC Capital Corp., 97 AD3d 35, 40 [1st Dept 2012]). "The party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene" (Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135, 142 [1993]). 
Here plaintiffs can pursue their remedies directly against the owners. The 
undisputed fact that KFS is controlled by NBNIII is of no moment.
Here, plaintiffs have failed to allege the required inequity, fraud, or malfeasance. The only wrong alleged here is that the defendants breached the Agreement (or induced detrimental reliance) when they refused to close on the specified terms (see Complaint, ¶ 28). It is not alleged that KFS' corporate status was used to commit a fraud or other wrong against the plaintiffs (see e.g. Albstein v Elany Contr. Corp., 30 AD3d 210 [2006], lv. denied 7 NY3d 712 [2006]). Moreover, and as discussed above this is not a case in which plaintiffs are asserting that KFS (the subsidiary with which plaintiffs are not in privity) was the instrument of a fraud against plaintiffs. Therefore, the 
corporate veil cannot be pierced under New York law. Accordingly, plaintiffs' service on NBNIII was insufficient and this court lacks jurisdiction over that entity. 
B. As to KFS
On a motion to dismiss a plaintiff's claim pursuant to CPLR § 3211 (a) (7) for failure to state a cause of action, the court is not called upon to determine the truth of the allegations (see, Campaign for Fiscal Equity v State, 86 NY2d 307, 317 [1995]; 219 Broadway Corp. v Alexander's, Inc., 46 NY2d 506, 509 [1979]). Rather, the court is required to "afford the pleadings a liberal construction, take the allegations of the complaint as true and provide plaintiff the benefit of every possible inference [citation omitted]. Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (EBC I v [*7]Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]). The court's role is limited to determining whether the pleading states a cause of action, not whether there is evidentiary support to establish a meritorious cause of action (see, Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]; Sokol v Leader, 74 AD3d 1180 [2d Dept 2010]).
To succeed on a motion to dismiss pursuant to CPLR § 3211 (a) (1), the documentary evidence submitted that forms the basis of the defense must resolve all factual issues and definitively dispose of the plaintiff's claims (see 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002]; Blonder & Co., Inc. v Citibank, N.A., 28 AD3d 180, 182 [1st Dept 2006]). A motion to dismiss pursuant to CPLR § 3211 (a) (1) "may be appropriately granted only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (McCully v. Jersey Partners, Inc., 60 AD3d 562, 562 [1st Dept. 2009]). The facts as alleged in the complaint are regarded as true, and the plaintiff is afforded the benefit of every favorable inference (see Leon v Martinez, 84 NY2d 83, 87-88 [1994]). Allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not entitled to any such consideration (see, e.g., Nisari v Ramjohn, 85 AD3d 987, 989 [2nd Dept 2011]).
CPLR § 3211 (a) (1) does not explicitly define "documentary evidence." As used in this statutory provision, " 
'documentary evidence' is a 'fuzzy term', and what is documentary evidence for one purpose, might not be documentary evidence for another" (Fontanetta v John Doe 1, 73 AD3d 78, 84 [2nd Dept 2010]). "[T]o be considered 
'documentary,' evidence must be unambiguous and of undisputed authenticity" (id. at 86, citing Siegel, Practice Commentaries, McKinney's Cons. Laws of NY, Book 7B, CPLR 3211:10, at 21-22). Typically that means judicial records such as judgments and orders, as well as documents reflecting out-of-court transactions such as contracts, releases, deeds, wills, mortgages and any other papers, "the contents of which are essentially undeniable'" (id. at 84-85). Here, the documentary evidence is the Agreement, signed by NBNIII and not by KFS.
Defendants argue that plaintiffs have failed to state a claim against KFS because plaintiffs have not alleged, nor does the Agreement show, that KFS was a party to the Agreement (see Memo at 14-15). Defendants claim that KFS cannot be held responsible for the actions of NBNIII unless NBNIII executed the Agreement on behalf of KFS, and there is no indication in the Agreement that NBNIII did so (see id. at 15, citing December Construction Corp. v Staten Island Mall, 56 AD2d 768 [1st Dept 1977]). 
Plaintiffs concede that NBNIII, not KFS, signed the Agreement (Transcript of 
Oral Argument, p. 13). Plaintiffs contend that, even though KFS did not sign the Agreement, it should be held to the Agreement as NBNIII's alter ego. As discussed above, the plaintiffs have failed to allege facts sufficient to pierce the corporate veil, and so KFS will not be held liable for breaching an agreement to which it was not a party. Therefore, this claim also fails as a matter of law. Plaintiffs may seek to require NBNIII, the entity with which they contracted, to honor the terms of the contract through exercise of its powers as the sole shareholder of KFS.

It is hereby
ORDERED that motion sequence number 001 in the action bearing index number 651906/2015 is granted and the complaint is hereby dismissed.
This constitutes the decision and order of the court.
DATED: February 24, 2016
E N T E R,
______________________________
O. PETER SHERWOOD
J.S.C.