Matter of Catapano (2025 NY Slip Op 50401(U))

[*1]

Matter of Catapano

2025 NY Slip Op 50401(U)

Decided on March 20, 2025

Surrogate's Court, Putnam County

Molé, S.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 20, 2025
Surrogate's Court, Putnam County

In the Matter of a Proceeding Pursuant to SCPA 2103 and 2104 
 to Turnover Property Withheld in the Estate of John A. Catapano a/k/a JOHN CATAPANO, Deceased.

File No. 0020-203/E

Law Offices of Stack & Associates, PLLC
Attn: Tamara L. Stack, Esq.
Attorneys for Respondents Angelina C. Valentini & Victoria Hirsch
James W. Lapaglia, PLLC
Attn: James W. LaPaglia, Esq.
Attorneys for Petitioner Antonio P. Catapano

Anthony R. Molé, S.

The following papers were read and considered in accordance with CPLR 2219 (a) and 22 NYCRR 207.7 on the motion of the Respondents ANGELINA C. VALENTINI and VICTORIA HIRSCH, to dismiss the turnover petition of petitioner ANTONIO P. CATAPANO on several grounds, including: (i) the proceeding being time barred pursuant to CPLR 3211 (a) (5); (ii) that petitioner's claims of unjust enrichment, undue influence, incapacity, fraud, and breach of fiduciary duty are time barred under CPLR 3211 (a) (5); (iii) that petitioner failed to plead with particularity the claims of fraud, undue influence, and breach of fiduciary duty pursuant to CPLR 3016 (b), thus subjecting those claims to dismissal under CPLR 3211 (a) (7); (iv) lack of subject matter jurisdiction on the ground that petitioner lacks standing; (v) dismissal of petitioner's claim that the subject bank accounts were "convenience accounts" within the meaning and application of the Connecticut Banking Law [FN1]
; and (vi) that the Court strike paragraph 45 of the turnover petition and Exhibit U appended thereto as being inadmissible pursuant to CPLR 3024 (b) and 4547:
Papers:
• Notice of Motion; Affidavits in Support of Angelina C. Valentini and Victoria Hirsch; [*2]Affirmation of Victoria Hirsch; Affidavit in Support of Josylda Kopke; Counsel's Affirmation in Support; Memorandum of Law in Support; Exhibits 1-11 [FN2]
• Petitioner's Affirmation in Opposition; Exhibits AA-BB
• Counsel's Affirmation in Reply in Further Support of the Motion
• Interim Order (dated January 22, 2025)
• Supplemental Brief of Respondents Angelina C. Valentini and Victoria Hirsch
• Petitioner's Supplemental Brief
Upon review of the aforesaid papers,[FN3]
the Court finds, holds, and determines as follows:
I. Background
This is proceeding commenced pursuant to SCPA article 21. John A. Catapano a/k/a John Catapano (hereinafter decedent) died on March 6, 2020 in the State of Connecticut while he was a resident of New York. In decedent's will made in 2007,[FN4]
he left his property to his five children in equal shares. Decedent's will was admitted to probate when letters testamentary were issued on October 21, 2020 to his two children as coexecutors — namely, respondent Angelina C. Valentini and John Aaron Catapano — who were nominated in the will.
In May 2022, petitioner Antonio P. Catapano, decedent's son, (hereinafter referred to as petitioner), filed a petition seeking limited letters of administration for the sole purpose of commencing and prosecuting a discovery and turnover proceeding (see SCPA 702 [9]; 2103). No objections were made by any interested party for such letters. A decree awarding such relief was issued by the undersigned on October 24, 2022. Limited letters were accordingly issued to petitioner on said date.
On March 3, 2023, petitioner, by order to show cause, commenced a proceeding pursuant to SCPA 2103 in his fiduciary capacity against respondents Valentini and Victoria Hirsch (decedent's daughter), seeking information about certain Connecticut bank accounts alleged to be assets of decedent's estate. Specifically, petitioner sought to discover what happened to the bank funds because the only asset distributed from the estate was the net proceeds from the sale of certain real property. Moreover, petitioner sought to explore alleged gifts made by respondents, as reflected in the Inventory of Assets filed in October 2021.
Subsequently, the Court issued an Order to Attend, dated May 23, 2023, directing inquiry and examinations of respondents (see SCPA 2103 [3], [5]).[FN5]
The Order to Attend was amended [*3]the following day (May 24, 2023). The Order to Attend required respondents to give their depositions relating to information about the Connecticut bank accounts (see SCPA 2103). The parties informally exchanged some discovery documents.
Following respondents' attendance and examinations in the inquisitorial phase,[FN6]
petitioner filed a petition, on September 27, 2024 for, inter alia, turnover of $867,695.22 in funds that were allegedly withdrawn and kept by respondents from the Connecticut bank accounts
A Citation and Order to Show Cause was issued by this Court — later adjourned on consent to December 20, 2024. The thrust of petitioner's claims is that in 2019, respondents improperly removed decedent as a joint account holder from the Connecticut bank accounts, improperly withdrew money from those accounts, and thereafter established separate banks accounts and kept all of the funds. Petitioner claims that the bank funds are estate property and should be turned over inasmuch as the bank accounts are assets of the estate. Petitioner commenced this turnover proceeding against respondents seeking, among other things, the return of those banks funds as decedent's alleged property that belongs to the estate.
On November 27, 2024, respondents filed a motion to dismiss the turnover petition on, among other grounds, that this proceeding is time barred and for failure to state a cause of action with respect to several claims that are asserted by petitioner herein (see CPLR 3211 [a] [5], [7]). Petitioner, in turn, filed opposition papers on December 13, 2024. Respondents filed reply papers on December 18, 2024.
By Interim Order dated January 22, 2025, the Court directed the parties to submit supplemental briefing concerning certain legal issues relative to the statute of limitations and application of tolling periods vis-à-vis timely commencement of this proceeding. Thereafter, the Court held oral argument on respondents' motion on February 21, 2025. The motion is fully submitted and ripe for determination.
II. Discussion
A. Subject Matter Jurisdiction and Standing
Before turning to the merits, the Court initially resolves the issue of justiciability because it implicates this Court's subject matter jurisdiction, which extends only to justiciable controversies (see Rubinstein v Salomon, 46 AD3d 536, 539 [2d Dept 2007]). Though not addressed at great length, respondents contend that this Court lacks subject matter jurisdiction, and moreover, that petitioner lacks standing to bring a turnover proceeding and that he is not entitled to recover on a cause of action under the laws of Connecticut inasmuch as he has no [*4]pecuniary interest in the joint bank accounts that were created there.
Respondents argue that dismissal is warranted due to petitioner's lack of standing, thus divesting this Court of subject matter jurisdiction. Although not identified as such in that branch of their moving papers, respondents' contention in this regard is predicated on CPLR 3211 (a) (2), insofar as they contend that the Surrogate's Court lacks subject matter jurisdiction over the claims asserted by petitioner in the turnover petition.
As a preliminary matter, respondents improperly conflate subject matter jurisdiction with standing. Thus, the premise of their argument is wrong because standing and subject matter jurisdiction are separate and distinct concepts. The question of whether this Court has subject matter jurisdiction over the underlying SCPA article 21 proceeding is wholly distinct from the question of whether petitioner — as a party who may have arguably suffered an injury-in-fact directly caused by respondents' actions that is redressable by this Court — has the requisite standing to bring and maintain this proceeding. Whether this Court has subject matter jurisdiction and whether petitioner has standing shall each be addressed in turn.
1. Subject Matter Jurisdiction
In addressing the first issue, the Court concludes that it has subject matter jurisdiction over this proceeding because it affects the affairs of the decedent and the administration of decedent's estate. "Subject matter jurisdiction has been defined as the power to adjudge concerning the general question[s] involved, and is not dependent upon the state of facts which may appear in a particular case, arising, or which is claimed to have arisen, under the general question" (21st Century Pharm. v American Intl. Group, 195 AD3d 776, 778 [2d Dept 2021] [internal quotation marks and citations omitted]). The Surrogate's Court has broad jurisdiction to determine controversies related to the decedent's affairs (see NY Const, art VI, §§ 12 [d]; SCPA 201 [3]; see also Matter of Ruggiero, 40 Misc 3d 1236[A], *1 [Sur Ct, Nassau County 2013]).
Subject matter jurisdiction of the Surrogate's Court has been expanding since the Court of Appeals seminal opinion in Matter of Piccione (57 NY2d 278 [1982]). A Surrogate has the power to award all of the relief concerning the decedent's affairs (see SCPA 201 [3]; 209 [4], [10]). There is no rigid, bright line test to be applied to whether a Surrogate has subject matter jurisdiction. "Each decision is sui generis and greatly depends on the facts giving rise to the legal dispute. In fact, even the specific type of relief sought is not necessarily determinative" (Matter of Trump, 68 Misc 3d 593, 595 [Sur Ct, Queens County 2020]).
Subject matter jurisdiction over this proceeding is conferred upon this Court by operation of the New York State Constitution (see NY Const, art VI, §§ 12 [d], [e]). It is also conferred by SCPA 201 (3) since petitioner filed a petition for relief against a fiduciary concerning decedent's financial affairs. "[F]or the Surrogate's Court to decline jurisdiction, it should be abundantly clear that the matter in controversy in no way affects the affairs of a decedent or the administration of his [or her] estate" (Matter of Piccione, 57 NY2d 278, 288 [1982]).
Relevant here, "Section 702 of the Surrogate's Court Procedure Act provides for the issuance of limited letters of administration, which restrict or limit the holder to perform specific acts on behalf of an estate. The circumstances under which limited letters of administration may issue include situations in which a party seeks to commence and maintain 'any action or proceeding against the fiduciary, in his or her individual capacity, or against anyone else against whom the fiduciary fails or refuses to bring such a proceeding'" (Matter of Bennett, 84 AD3d 1365, 1366 [2d Dept 2011], quoting SCPA 702 [9]). "The objectives of SCPA 702 (8), (9) are to [*5]allow for separate representation in the event the primary fiduciary has a conflict with regard to some aspect of administration, and to provide a mechanism for suing the fiduciary or anyone else the fiduciary should have sued but did not (or will not)" (Matter of Bennett, 84 AD3d at 1366-1367 [internal ellipses, brackets, quotation marks, and citation omitted]).
In the present case, decedent's will was probated in this Court in 2020. Thereafter, petitioner was issued limited letters of administration in 2022 for the sole purpose of instituting a potential discovery or turnover proceeding under SCPA 702 (9). Given that the bank accounts belonged at one point to decedent as a joint account holder, and even if the accounts were in Connecticut, the Court holds that subject matter jurisdiction is conferred here because there is a basis for the Court to exercise its jurisdiction over monetary assets that may have belonged to decedent (see Matter of Ruggiero, 40 Misc 3d 1236[A], at *1; cf. Matter of O'Brien, 54 AD2d 880, 880 [1st Dept 1976]; see also Matter of Vergo, 137 Misc 2d 619, 621 [Sur Ct, Monroe County 1987], affd 145 AD2d 935 [4th Dept 1988]).
2. Standing
The Court next turns to the issue of standing since it "is a threshold determination, resting in part on policy considerations, that a person should be allowed access to the courts to adjudicate the merits of a particular dispute that satisfies the other justiciability criteria" (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 769 [1991]). Contrary to respondents' belief, standing is not associated with subject matter jurisdiction, but is "an aspect of justiciability which, when challenged, must be considered at the outset of any litigation" (id.).
On respondents' motion to dismiss the petition based upon the petitioner's alleged lack of standing, the burden is on the moving respondents "to establish, prima facie, that petitioner lacks standing as a matter of law" (Matter of Linder, 153 AD3d 1343, 1344 [2d Dept 2017]). That branch of respondents' motion to dismiss the petition on the ground that petitioner lacks standing is denied (see id.; see also CPLR 3211 [a] [3]; see generally Matter of Pernicone, 49 Misc 3d 1211[A], *2 [Sur Ct, Westchester County 2015]).
The Court concludes that petitioner has standing to bring this turnover proceeding. "Pursuant to [SCPA 2103], a fiduciary is entitled to discovery with respect to property held by a third person only upon a showing that the fiduciary has an interest in the property and is entitled to possession of the property or its value" (Matter of Wilmot, 244 AD2d 980, 981 [4th Dept 1997]). "The purpose of SCPA 2103 is to provide a vehicle through which the fiduciary can obtain information needed to determine the assets of the estate or the value thereof, as well as to effectuate a return of the property to the fiduciary" (Matter of Granowitz, 150 AD2d 446, 446 [2d Dept 1989] [internal brackets, quotation marks, and citation omitted]).
SCPA 103 (3) defines a "person interested as "[a]ny person entitled or allegedly entitled to share as beneficiary in the estate." "The Surrogate is empowered by statute to determine a decedent's interest in any property claimed to constitute a part of his or her gross estate, and to determine the rights of any persons claiming an interest therein" (Matter of Kiejliches, 292 AD2d 530, 531 [2d Dept 2002]; see SCPA 209 [4]). Applying those legal principles to this case, the Court finds that petitioner is an interested person within the meaning of SCPA 103 (3), insofar that he is named in decedent's will as a beneficiary. Further, petitioner obtained limited letters of administration to institute and prosecute the underlying discovery/turnover proceeding (see SCPA 702 [9]; Matter of Boatwright, 114 AD3d 856, 857 [2d Dept 2014]; see also Matter [*6]of Priestley [Teglas], 59 Misc 3d 859, 862-863 [Sur Ct, Westchester County 2018]).
Said differently, petitioner specifically sought authority from this Court to petition for certain relief. None of the respondents lodged an objection to the petition filed in 2022 under SCPA 702 (9). There is no dispute that pursuant to the 2022 Decree, petitioner was granted limited letters of administration to discover assets of the estate. Said Decree was issued by the undersigned giving petitioner the authority to commence this very proceeding.
And of note, respondents did not move to dismiss the discovery petition filed in March 2023 on the ground that petitioner lacked standing. Generally, the defense of lack of standing is waived when not asserted in an answer or a timely motion to dismiss (see CPLR 3211 [e]). "[T]he defense of lack of standing does not implicate subject matter jurisdiction; hence, it can be waived" (Fundo de Recuperacao de Ativos-Fundo de Investimentos em Direitos Creditorios Nao Padronizados v Ceagro Agricola LTDA, 210 AD3d 585, 586 [1st Dept 2022]). Respondents participated in the SCPA 2103 discovery proceeding without ever raising standing as an issue. If respondents objected to petitioner prosecuting the discovery proceeding on standing grounds, such an objection could have been initially raised by them earlier. Even if respondents cannot have said to waive the argument that petitioner lacks standing, the Court is unpersuaded by respondents' claim that petitioner is without standing (see id.; Matter of Benson, 64 Misc 3d 1226[A], *3 [Sur Ct, Albany County 2019]; cf. Matter of Rouson, 32 AD3d at 958).
As an additional ground to conclude that he has standing, petitioner could not justifiably demonstrate an injury to his alleged interests of a potential estate asset until after decedent's death. Petitioner gained standing to contest the joint bank accounts only after decedent's death in wake of probate proceedings, and subsequently, being issued limited letters of administration by a court of competent jurisdiction (see CPLR 203 [a]; SCPA 702 [9]; 2103; see also Matter of Radio Drama Network, Inc., 187 AD3d 526, 527 [1st Dept 2020]). For these reasons, the Court thus finds that petitioner has standing to bring and maintain this proceeding under SCPA article 21. 
B. Respondents' Motion to Dismiss the Petitioner's Claims
Preliminarily, petitioner did not comply with the drafting requirement for pleadings in his turnover petition, which requires that "[s]eparate causes of action . . . shall be separately stated and numbered" (CPLR 3014). Notwithstanding, inasmuch as a single set of material facts appears were alleged, regardless of the theory or theories of liability, and respondents did not raise an objection and have not claimed any prejudice, the form of the petition does not spell doom for petitioner given the liberal construction afforded to pleadings and because nonprejudicial defects should be overlooked (see CPLR 3026). Because the turnover petition is verified and cannot be said to be defective, petitioner's drafting defects will be ignored for purposes of deciding this motion (see CPLR 2001; SCPA 102, 302; Matter of Kearney, 182 AD3d 705, 706 [3d Dept 2020]).
Respondents press that the turnover petition and petitioner's claims of unjust enrichment, undue influence, incapacity, fraud, and breach of fiduciary duty asserted therein are all time-barred on statute of limitations grounds (see CPLR 3211 [a] [5]). In so arguing, respondents contend that the tolling provision of CPLR 210 (c) is inapplicable here, inasmuch as the alleged wrongful taking of the bank monies occurred before decedent's death on March 6, 2020. Respondents add that petitioner's belated filing of the discovery petition on March 3, 2023 did [*7]not toll the statute of limitations because that proceeding is inquisitorial in nature and the discovery petition itself was filed after the statute of limitations had expired.
Beginning with the turnover petition, respondents assert that the underlying proceeding is likened to an action for conversion or replevin where a three-year statute of limitations period applies (see CPLR 214 [3]; Matter of King, 305 AD2d 683, 683 [2d Dept 2003]; Matter of Neshewat, 237 AD2d 524, 525 [2d Dept 1997]). Respondents maintain that the statute of limitations expired on July 29, 2022 for the Savings Bank of Danbury checking account and on September 27, 2022 for the Savings Bank of Danbury certificate of deposit account — exactly three years from the dates when respondents allegedly withdrew funds from those bank accounts; and so, petitioner's filing of the discovery petition in March 2023 and the turnover petition in September 2024 are both well beyond the statute of limitations period, thus warranting dismissal.
Petitioner counters that the date of conversion is December 20, 2022. He maintains that respondents are incorrect in their conclusions that the 2019 withdrawal dates are when the conversions occurred and when the statute of limitations began to accrue. According to petitioner, the conversions of the bank account funds occurred on or about December 20, 2022, when respondents' counsel sent an email correspondence on said date stating, among other things, that respondents' were denying petitioner's request to return the bank funds since they deliberately removed decedent's name from the bank accounts because John Aaron Catapano, decedent's son, was stealing money from the accounts and respondents "took . . . action to protect the asset[s] from theft" (NY St Cts Elec Filing [NYSCEF] Doc No. 59, petition ¶ 45, exhibit U). Petitioner's argument in this respect is both factually and legally incorrect; however, such is not entirely fatal to his petition that warrants the drastic remedy of dismissal.
1. Timeliness of this Proceeding and Petitioner's Conversion Claim
"On a motion to dismiss a cause of action pursuant to CPLR 3211 (a) (5) on statute of limitations grounds, the movant bears the initial burden of establishing, prima facie, that the time in which to sue has expired. In this regard, the movant must establish, inter alia, when the cause of action accrued. A discovery proceeding pursuant to SCPA article 21 has been likened to an action for conversion or replevin and a three-year statute of limitations has been applied" (Matter of Asch, 164 AD3d 787, 788 [2d Dept 2018] [internal citations omitted]; see Sunyoung Jung v Reiner & Kaiser Assoc., 220 AD3d 643, 644 [2d Dept 2023]). SCPA 301 states, in pertinent part, that "a proceeding is commenced upon the filing of a petition" for purposes of computing the statute of limitations.
"The [s]tatute of [l]imitations for a discovery proceeding in the Surrogate's Court is governed by the Civil Practice Law and Rules" (Matter of Kraus, 208 AD2d 728, 728-729 [2d Dept 1994; see SCPA 102). Respondents are correct in advancing that "the [s]tatute of [l]imitations for a discovery proceeding is the three year [s]tatute of [l]imitations provided under CPLR 214 (3) for replevin and conversion actions" (Matter of Kraus, 208 AD2d at 729; see Matter of Neshewat, 237 AD2d at 525).
"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession. Two key elements of conversion are the [petitioner's] possessory right or interest in the property and the [respondent's] dominion over the property or interference [*8]with it, in derogation of the [petitioner's] rights" (Siegler v Lippe, 189 AD3d 903, 904 [2d Dept 2020] [internal citations omitted]).
"For statute of limitations purposes, a cause of action to recover damages for conversion generally accrues when the conversion takes place. However, where possession is originally lawful, a conversion does not occur until the owner makes a demand for the return of the property and the person in possession of the property refuses to return it" (id. at 904 [internal citations omitted]; accord Matter of Asch, 164 AD3d at 788; Matter of Rausman, 50 AD3d 909, 910 [2d Dept 2008]; Matter of King, 305 AD2d at 683). "Accrual runs from the date the conversion takes place and not from discovery or the exercise of diligence to discover" (Matter of Chung Li, 95 AD3d 881, 881-882 [2d Dept 2012] [internal brackets, quotation marks, and citations omitted]).[FN7]

Applying the legal principles to the case at bar, the Court concludes that respondents have failed to establish their burden of demonstrating that the statute of limitations on petitioner's conversion claim has expired (see Matter of Asch, 164 AD3d at 789). In the turnover petition, petitioner claims that the funds in the joint accounts are "subject to the [e]state's possessory right of interest" and that there was a "demand for the return of the [funds] on December 20, 2022," when respondents maintained their dominion over the assets" (NYSCEF Doc No. 59, petition ¶ 48). Petitioner claims that the bank funds in the joint accounts were improperly transferred from decedent's name on July 29 and September 27, 2019, and that respondents refused to return the monies "[a]lthough duly demanded" by petitioner (id. at ¶ 49).
Crediting respondents' factual allegations that they removed decedent's name from the bank accounts and withdrew certain funds from the accounts on July 29, 2019 and September 27, 2019, respectively, the Court finds that while respondents did those acts intentionally, they did so with authority and in order to protect the potential assets insomuch as respondents aver, and petitioner does not dispute, that John Aaron Catapano was manipulating decedent to steal money from the bank accounts in question. Hence, respondents' withdrawal of the bank funds from the joint accounts in 2019 was authorized and lawful (see Matter of Asch, 164 AD3d at 788-789; compare Matter of Chustckie, 203 AD3d 820, 822-823 [2d Dept 2022]).
But contrary to respondents' belief that money cannot be converted, "the funds of a specific, named bank account are sufficiently identifiable to be the subject of a conversion claim" (3P-733, LLC v Tawan Davis, 187 AD3d 626, 629 [1st Dept 2020] [internal quotation marks and citation omitted]). Respondents have not conclusively established that petitioner's conversion claim is untimely (see Matter of Rausman, 50 AD3d at 910).
The Court next addresses whether petitioner's conversion claim should be tolled insofar as it concerns the three-year statute of limitations period. The Court concludes that petitioner's conversion claim began to accrue when he was issued limited letters in 2022; thus, the statute of limitations on his conversion claim is not time barred (see Discussion of tolling of petitioner's [*9]conversion claim, supra at 9-12).
2. Tolling of Petitioner's Conversion Claim
The Court holds that petitioner timely commenced this SCPA article 21 discovery and turnover proceeding. His claim of conversion is not time barred. In reaching this conclusion, the Court highlights that respondents concede in their supplemental brief that petitioner's conversion claim was tolled and the statute of limitations on such claim has not expired.
"[A] beneficiary does not have an independent cause of action to seek to recover assets withheld from an estate. Therefore, an individual must obtain letters of administration before suing on behalf of the decedent's estate. There is no limitation per se as to the period in which a party is entitled to receive limited letters of administration" (Matter of Priestley [Teglas], 59 Misc 3d at 863 [internal citations omitted]). Here, the issuance of limited letters to inquire and investigate the alleged modification and withdrawals to the joint bank accounts was necessary as it concerns the affairs of decedent and potential assets of his estate (see SCPA 702).
"The commencement of a SCPA 2103 discovery proceeding by an order to attend tolls the statute" (Matter of Loew, 38 Misc 3d 1206[A], *8 [Sur Ct, Nassau County 2012]). "Ordinarily, a discovery proceeding under SCPA 2103, which is deemed to be commence[d] upon the issuance of the original order to attend, notwithstanding subsequent amendments to the accompanying petition to discover assets, has been treated as an action for replevin or conversion, which . . . must be commenced the earlier of one year from the date letters were issued or three years after the date of death" (Matter of Colonna, NYLJ, May 19, 1998 at 32, col 4 [Sur Ct, Westchester County]; see Matter of Jacobs, NYLJ, May 12, 2009 at 46, col 4 ["(a) discovery proceeding is deemed to commence upon the issuance of the original order to attend, notwithstanding subsequent amendments to the accompanying petition"]; see also CPLR 210; 214 [3]).
"A toll suspends the running of the applicable period of limitation for a finite time period, and 'the period of the toll is excluded from the calculation of the relevant time period'" (Brash v Richards, 195 AD3d 582, 582 [2d Dept 2021], quoting Chavez v Occidental Chem. Corp., 35 NY3d 492, 505 n 8 [2020] [internal brackets omitted]). "As a matter of equity, if the respondent in a discovery proceeding is the fiduciary, and the proceeding is commenced by a limited administrator, the statute of limitations is tolled for the period of time within which the fiduciary, in his [or her] fiduciary capacity, should have commenced such a claim on behalf of the estate against herself individually" (Matter of Priestley [Teglas], 59 Misc 3d at 864).
For example, in Matter of Rella (20 Misc 3d 1143[A] [Sur Ct, Bronx County 2008], affd 67 AD3d 493 [1st Dept 2009]), Surrogate Lee L. Holzman tolled the statute of limitations for the 11-month period from when the fiduciaries received preliminary letters to the time an estate beneficiary received limited letters of administration to institute a discovery proceeding (see id. at *3-4). The Rella Court ultimately held that the cause of action sounding in conversion was not barred by the applicable statute of limitations and the proceeding was timely filed (see id. at *4).
Here, inasmuch as the conversion claim is partially against respondent Valentini, as the coexecutrix and a cofiduciary, the statute of limitations did not begin to accrue until October 24, 2022, the date when petitioner was issued limited letters of administration by this Court (see Matter of Priestley [Teglas], 59 Misc 3d at 864). Decedent died on March 6, 2020. Letters testamentary were issued to respondent Valentini and John Aaron Catapano on October 21, 2020.
Petitioner was issued limited letters of administration on October 24, 2022 for the sole purpose of bringing a SCPA 2103 proceeding against the estate. Subsequently, petitioner commenced the underlying proceeding by a proposed order to show cause on March 3, 2023, which the Court signed with a return date of March 31, 2023 to obtain personal jurisdiction over the parties (see NYSCEF Doc Nos. 25-27). Thereafter, the Court issued the Order to Attend on May 23, 2023, which was subsequently amended the following day (see NYSCEF Doc Nos. 37, 41).
Respondents' reliance and reference to the "equitable tolling rule" for petitioner's conversion claim is incorrect and misplaced. The doctrine of equitable tolling is generally applied to federal causes of action in New York and does not apply where, as here, petitioner has asserted state claims in a Surrogate's Court proceeding (see Shared Communications Servs. of ESR, Inc. v Goldman, Sachs & Co., 38 AD3d 325, 325 [1st Dept 2007]; see O'Hara v Bayliner, 89 NY2d 636, 646 [1997], cert denied 522 US 822 [1997]; Great Lakes Ins. SE v American S.S. Owners Mut. Protection & Indem. Assn. Inc., 228 AD3d 429, 430 [1st Dept 2024]; Ari v Cohen, 107 AD3d 516, 517 [1st Dept 2013]). The Court thus declines to apply the doctrine of "equitable tolling" to petitioner's state claims.
The Court is also compelled to note, in passing, that there was a toll in effect for commencement of any legal action or proceeding from March 20, 2020 to November 3, 2020 in wake of the novel coronavirus (COVID-19) pandemic based on successive executive orders issued by former Governor Andrew M. Cuomo.[FN8]
Were the Court to take that tolling period into account, it spanned 228 days. Even discounting the COVID-19 toll, the time period from when letters testamentary were issued to Valentini and when petitioner was granted limited letters of administration to prosecute this proceeding consists of 733 days — thus, signifying a toll on petitioner's commencement of the discovery proceeding and the associated Order to Attend. The time period from when petitioner was issued limited letters and filed the discovery proceeding is 130 days. The time period from when petitioner was issued limited letters and from when this Court issued the original Order to Attend consists of a period of 211 days.
Because petitioner's conversion claim began to accrue on October 24, 2022, and the Order to Attend was signed and issued by this Court on May 23, 2023, it cannot be said that the statute of limitations expired on petitioner's conversion claim as it pertains to this SCPA article [*10]21 proceeding. Critically, respondents' concession that petitioner's filing of the discovery and turnover petitions were subjected to tolling is fatal to their proposition that this proceeding is time barred. This issue has been squarely raised and addressed by other fellow Surrogates (see Matter of Priestley [Teglas], 59 Misc 3d at 864; Matter of Loew, 38 Misc 3d 1206[A] at *8; Matter of Rella, 20 Misc 3d 1143[A] at *3-4; see also Matter of Jacobs, NYLJ, May 12, 2009 at 46, col 4). The Court follows the decisions and holdings of co-ordinate courts as persuasive in the particular circumstances of this case.
Next, the Court rejects respondents' novel argument that the Court decline to toll the statute of limitations for petitioner's conversion claim. Respondents cite no legal authority for their proposition in this respect. Instead, respondents advance that the coexecutor, John Aaron Catapano, had a fiduciary duty to bring the discovery and turnover proceeding since he had actual knowledge about the Connecticut bank funds and could have pursued any potential estate assets. This contention, along with respondents related suggestion that petitioner and his attorney should have "instructed" or directed John Aaron Catapano to initiate the underlying proceeding as a coexecutor, are wholly without merit. John Aaron Catapano, although a cofiduciary, was not joined in this proceeding (see generally CPLR 1001; 1004). Again, respondents admittedly cite no legal authority in support of these contentions. But they ask this Court to create a novel exception to, in effect, dismiss this proceeding in its entirety. The Court is unpersuaded and declines this invitation.
Accordingly, respondents failed to meet their prima facie burden of demonstrating that the statute of limitations on petitioner's conversion claim as to the joint bank accounts had run. There was no alleged wrongful act of possession until after decedent's death. Given the tolling provisions discussed above, petitioner's conversion claim is not barred by the statute of limitations. This proceeding was timely filed by petitioner (see Matter of Asch, 164 AD3d at 789; Matter of Rausman, 50 AD3d at 910; compare Matter of King, 305 AD2d at 683).
3. Petitioner's Unjust Enrichment Claim
Respondents argue that petitioner's claim of unjust enrichment is time-barred by the statute of limitations, inasmuch as he only seeks monetary relief rather than equitable relief. Additionally, they argue that petitioner's cause of action for unjust enrichment ought to be dismissed for failure to state a cause of action under CPLR 3211 (a) (7). With respect to the latter contention, respondents assert that they were not unjustly enriched at the expense of decedent or petitioner, since they simply removed decedent from the joint bank accounts to prevent the coexecutor from stealing funds. Respondents add that, in any event, they would have inherited the bank funds upon decedent's death based on the right of survivorship.
Petitioner, in opposition, does not squarely address the viability of his unjust enrichment claim, as alleged in the petition. Instead, he advances that the subject bank accounts are convenience accounts, and that the bank funds were improperly converted by respondents when decedent was removed therefrom.
Initially, respondents' argument that a three-year statute of limitations period applies to petitioner's unjust enrichment claim inasmuch as he is only seeking monetary damages is incorrect. It is axiomatic that a claim for unjust enrichment is an equitable remedy (see Betz v Blatt, 160 AD3d 696, 701 [2d Dept 2018]; Glinskaya v Zelman, 128 AD3d at 772; Matter of Witbeck, 245 AD2d 848, 850 [3d Dept 1997]); and is subject to a six-year statute of limitations period (see CPLR 213 [1]; Matter of Chustckie, 203 AD3d at 822-823).
Here, the "wherefore clause" in the petition reflects that petitioner is seeking the following relief against respondents: (i) to "immediately turnover" alleged estate assets in their "custody, possession, and control"; (ii) that if the returned assets are less than $867,695.22, plus interest, then respondents "jointly or severally compensate the [e]state for the value of any property"; and (iii) to impose sanctions against Valentini for allegedly breaching her fiduciary duty (NYSCEF Doc No. 59, petition at 10-11).
The Court construes the foregoing to mean that petitioner is seeking both monetary and equitable relief, not strictly money damages (compare Ingrami v Rovner, 45 AD3d 806, 808 [2d Dept 2007). In other words, the primary relief sought by petitioner in the turnover petition is not money damages solely for himself but to bring the bank funds back into the estate. 
To determine the timeliness of petitioner's unjust enrichment claim here, "[i]t is well established that courts 'look to the underlying claim and the nature of the relief sought to determine the applicable period of limitation'" (Matter of Clark, 146 AD3d 495, 496 [1st Dept 2017], lv denied 29 NY3d 907 [2017], quoting Vigilant Ins. Co. of Am. v Housing Auth. of City of El Paso, Tex., 87 NY2d 36, 41 [1995]). Generally, a cause of action for unjust enrichment has a six-year statute of limitations period (see CPLR 213 [1]; Matter of Chustckie, 203 AD3d at 822-823; Matter of Trombley, 137 AD3d 1641, 1642 [4th Dept 2016]; see also Matter of Ziv, 80 Misc 3d at 977). "The statute of limitations on an unjust enrichment claim begins to run upon the occurrence of the wrongful act giving rise to the duty of restitution" (Ingrami v Rovner, 45 AD3d at 808; see Matter of Trombley, 137 AD3d at 1642-1643; Lambert v Sklar, 30 AD3d 564, 566 [2d Dept 2006]).
Here, the Court concludes that petitioner's claim sounding in unjust enrichment is subject to a six-year statute of limitations. Regardless of the accrual date or the date of decedent's death, petitioner's claim for unjust enrichment is timely. Respondents allegedly withdrew the bank funds on July 29 and September 27, 2019. The SCPA 2103 proceeding was initially commenced by petitioner in March 2023. Now, petitioner is seeking, inter alia, the turnover of money to the decedent's estate — not money damages in a specified figure that should solely be awarded to him. Hence, petitioner's unjust enrichment claim is not time barred based on the date of respondents' alleged conduct in 2019 (see Matter of Trombley, 137 AD3d at 1642-1643; Matter of Saft, 24 Misc 3d 1214[A], *9 [Sur Ct, Nassau County 2009]).
The Court further denies that branch of respondents' motion to dismiss the unjust enrichment claim for failure to state a cause of action. A CPLR 3211 (a) (7) motion to dismiss turns on whether — based on the factual allegations — the petitioner has a claim, not whether he or she has stated one.
"In determining whether a pleading is sufficient to withstand a motion to dismiss pursuant to CPLR 3211 (a) (7), the sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail. The pleading must be construed liberally, the factual allegations deemed to be true, and the nonmoving party granted the benefit of every possible favorable inference. In addition, a court may consider any factual submissions made in opposition to a motion to dismiss in order to remedy pleading defects" (Matter of Baugher, 98 AD3d 1111, 1112 [2d Dept 2012] [internal brackets, quotation marks, and citations omitted]).
The issue of whether petitioner "can ultimately establish [his] allegations is not part of the calculus in determining a motion to dismiss" (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d [*11]11, 19 [2005]). A party's poor draftsmanship of a pleading should not result in summary dismissal even if it is inartfully drawn (see generally Estate of Unterweiser v Town of Hempstead, 235 AD2d 453, 453 [2d Dept 1997]). In the context of this motion, the Court must determine only whether petitioner's allegations state a cognizable claim for unjust enrichment.
With that governing legal framework in mind, the Court holds that petitioner's allegations of unjust enrichment survive respondents' motion to dismiss. Although inartfully pled, petitioner has pled an adequate cause of action of unjust enrichment in the turnover petition.
"The theory of unjust enrichment is rooted in the equitable principle that a person shall not be allowed to enrich himself [or herself] unjustly at the expense of another. The essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the [respondent] to retain what is sought to be recovered" (Mannino v Wells Fargo Home Mtge., Inc., 155 AD3d 860, 862 [2d Dept 2017] [internal quotation marks and citations omitted]). "To recover under a theory of unjust enrichment, a litigant must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered" (Matter of Baugher, 219 AD3d 935, 936 [2d Dept 2023] [internal brackets omitted], quoting Columbia Mem. Hosp. v Hinds, 38 NY3d 253, 275 [2022]). "Unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties (id. at 275). "Although privity is not required for an unjust enrichment claim, a claim will not be supported if the connection between the parties is too attenuated" ((see Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 182 [2011]).
"The essence of such a cause of action is that one party is in possession of money or property that rightly belongs to another" (Clifford R. Gray, Inc. v LeChase Constr. Servs., LLC, 31 AD3d 983, 988 [3d Dept 2006]). "Generally, courts will look to see if a benefit has been conferred on the [respondents] under mistake of fact or law, if the benefit still remains with the [respondents], if there has been otherwise a change of position by the [respondents], and whether the [respondents'] conduct was tortious or fraudulent" (Paramount Film Distrib. Corp. v State of New York, 30 NY2d 415, 421 [1972], cert denied 414 US 829 [1973]). "Unjust enrichment does not require a showing that the party enriched committed a wrongful act, as innocent parties may frequently be unjustly enriched" (Trotta v Ollivier, 91 AD3d 8, 12 [2d Dept 2011] [emphasis added]).
Examining the turnover petition in a favorable light to petitioner, accepting his factual allegations as true, and according him the benefit of every favorable inference — as the Court must do on a motion to dismiss for failure to state a cause of action — petitioner has, at the least, demonstrated a legally cognizable "transfer in reliance" and unjust enrichment enjoyed by respondents. Petitioner satisfied all of the conjunctive factors to recover under a theory of unjust enrichment. The petition alleges, among other things, that respondents "have been enriched by the transfer of the [e]state assets at the expense of the [e]state" and "[i]t is against equity and good conscience to permit [respondents] to retain the [e]state assets" (NYSCEF Doc No. 59, petition¶ 50). Moreover, the relationship between the parties is not too attenuated since they are co-beneficiaries of the estate (see Mandarin Trading Ltd. v Wildenstein, 16 NY3d at 182; Leidel v Annicelli, 114 AD3d 536, 537 [1st Dept 2014], lv denied 24 NY3d 976 [2014]).
To permit respondents to retain for their own benefit estate assets, for which there may have arguably been a fiduciary duty by Valentini to distribute, would result in respondents being unjustly enriched with a substantial amount of money. Such should not be countenanced. A [*12]contractual agreement between the parties is not required because petitioner claims that the bank funds rightfully belong to the estate.
In the Court's view, the petition and the voluminous documents annexed thereto sufficiently allege that respondents received monies that at one point belonged to decedent, that respondents benefited from the receipt of the bank funds, and that respondents should not in good conscience be permitted to retain the bank funds in their entirety because allowing such would be unjust and inequitable (see Matter of Witbeck, 245 AD2d at 850-851).
The Court determines that the turnover petition states a viable cause of action for unjust enrichment. Such claim is therefore timely and sustained (see CPLR 3211 [a] [5], [7]).
4. Petitioner's Fraud Claim
Respondents next contend that petitioner's claims of fraud, breach of fiduciary duty, undue influence, and incapacity must be dismissed because he failed to plead those claims with particularity as required by CPLR 3016 (b); and therefore, those claims are subject to dismissal for failure to state a cause of action pursuant to CPLR 3211 (a) (7). The Court will address each of those claims separately and recites the applicable legal standards. 
Beginning first with petitioner's fraud claim, the Court dismisses it based on the scant allegations contained in the petition. "Fraud must be pleaded with particularity" (Matter of Kraus, 208 AD2d 728, 728-729 [2d Dept 1994]; see CPLR 3016 [b]; Matter of Colonna, 271 AD2d 444, 445 [2d Dept 2000]). That was not done here by petitioner in the turnover petition.
"The elements of a cause of action to recover damages for fraud are a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages. A claim rooted in fraud must be pleaded with the requisite particularity under CPLR 3016 (b). The pleading requirements of CPLR 3016 (b) may be met when the facts are sufficient to permit a reasonable inference of the alleged conduct, and the statute should not be so strictly interpreted as to prevent an otherwise valid cause of action in situations where it may be impossible to state in detail the circumstances constituting a fraud" (Katsorhis v 718 W. Beech St, LLC, 234 AD3d 744, 748 [2d Dept 2025] [internal brackets, quotation marks, and citations omitted]).
In construing the allegations in the turnover petition in the light most favorable to petitioner, the Court holds that the petition does not sufficiently detail a cause of action for fraud against respondents. Petitioner simply asserts in the turnover petition that respondents "induced" decedent to "transfer . . . the property" based on "false statements" (NYSCEF Doc No. 59, petition ¶ 54). Petitioner does not squarely identify the content of any alleged false statement made by either respondent to decedent. Nor does petitioner specifically allege in any detail that the creation of the joint bank accounts or decedent's removal as an owner therefrom were perpetuated by fraudulent conduct on the part of respondents. Petitioner also does not assert that respondents made a material misrepresentation of fact to him or that they had knowledge of its falsity. The disputed facts are insufficient to permit the Court to reach a reasonable inference of respondents' alleged conduct with respect to petitioner's fraud claim.
Because the petition does not plead fraud with particularity, it fails to satisfy the requirements of CPLR 3016 (b). Petitioner's claim in this respect contains only bare and conclusory allegations without any supporting detail. Among other deficiencies in his allegations, petitioner failed to allege that respondents made any misrepresentation to him (see Glinskaya v Zelman, 128 AD3d 771, 772 [2d Dept 2015], lv denied 26 NY3d 960 [2015]).
Thus, the turnover petition fails to state a cause of action for fraud. That claim is dismissed (see id.; Scope v Equity NY Corp., 222 AD3d 687, 689 [2d Dept 2023]; Greenberg v Blake, 117 AD3d 683, 684 [2d Dept 2014]; see also CPLR 3211 [a] [7]; compare Matter of Colonna, 271 AD2d at 445).
5. Petitioner's Breach of Fiduciary Duty Claim
The Court likewise dismisses petitioner's breach of fiduciary duty claim. "The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the [respondent], and (3) damages directly caused by the [respondent's] misconduct" (Matter of Caton, 206 AD3d 993, 994 [2d Dept 2022] [internal quotation marks and citation omitted]).
Initially, this claim is timely because it is the essential character of a claim that governs its applicable time limitation (see Matter of Mueller, 19 Misc 3d 536, 540 [Sur Ct, Westchester County 2008]). However, a breach of fiduciary duty claim is also required to be pleaded with specific particularity under CPLR 3016 (b) (see Dineen v Wilkens, 155 AD3d 607, 609 [2d Dept 2017]; Palmetto Partners, L.P. v AJW Qualified Partners, LLC, 83 AD3d 804, 808 [2d Dept 2011]).
Here, petitioner failed to plead the breach of fiduciary duty claim with particularity (see CPLR 3016). Petitioner claims that as a coexecutrix, Valentini "breached her fiduciary duty" by "mingling assets of the estate with her own assets" (NYSCEF Doc No. 59, petition ¶ 55). But neither of the respondents was a designated or appointed fiduciary in 2019. Petitioner failed to plead specific factual allegations that respondents' ownership, use, and withdrawal of the funds in the joint bank accounts constituted misconduct on their part (see Matter of Caton, 206 AD3d). All in all, the allegations delineated in the turnover petition with respect to the purported breach of fiduciary duty claim are vague and conclusory (see Parker Waichman LLP v Squier, Knapp & Dunn Communications, Inc., 138 AD3d 570, 571 [1st Dept 2016]; compare Orange Orch. Props. LLC v Gentry Unlimited, Inc., 191 AD3d 609 [1st Dept 2021]). Thus, this claim is also dismissed for failure to state a cause of action (see CPLR 3211 [a] [7]).
6. Petitioner's Undue Influence Claim
Next, the Court dismisses so much of petitioner's claim alleging that respondents exerted undue influence upon decedent. Respondents move pursuant to CPLR 3016 (b) and 3211 (a) (7) to dismiss petitioner's undue influence claim insofar as asserted against them on the ground that petitioner fails to state in sufficient detail the circumstances constituting the wrong (see id.; Levy v Levy, 215 AD3d 742, 744 [2d Dept 2023]). The Court agrees and grants this branch of respondents' motion.
"To establish undue influence, [a petitioner must] demonstrate that [the] decedent was actually constrained to act against [his or] her own free will and desire by identifying the motive, opportunity[,] and acts allegedly constituting the influence, as well as when and where such acts occurred" (Constantine v Lutz, 204 AD3d 1328, 1330 [3d Dept 2022] [internal quotation marks and citation omitted]). "While undue influence can rarely be shown by direct proof, there must be affirmative evidence of facts and circumstances from which the exercise of such undue influence can fairly and necessarily be inferred. Mere speculation and conclusory allegations, without specificity as to precisely where and when the influence was actually exerted, are [*13]insufficient to raise an issue of fact" (Matter of Haley, 189 AD3d 2000, 2002 [3d Dept 2020] [internal brackets, quotation marks and citations omitted]).
Applying those legal principles here, petitioner was required to set forth in detail the circumstances constituting the alleged wrong to the extent he allegedly asserts purported conduct by respondents exercising undue influence upon decedent. However, he merely alleges that decedent "felt beholden to and increasingly dependent on [respondents] because they had access to and control over critical aspects of [d]ecedent's life while his health was ailing" (NYSCEF Doc No. 59, petition ¶ 51). Standing alone, such allegation does not give rise to an inference of undue influence. While the turnover petition sets forth a series of purported acts by respondents occurring during the last few years of decedent's life, petitioner's claim of undue influence is not pleaded with sufficient detail to satisfy CPLR 3016 (b). Finally, petitioner is not entitled to an opportunity to conduct discovery on his undue influence claim based only on the mere hope that he might obtain some evidence to substantiate his conclusory allegation of undue influence. Hence, so much of the turnover petition pleading a claim for undue influence is dismissed (see id.; Levy v Levy, 215 AD3d at 744; Thea v Thea, 284 AD2d 245, 245 [1st Dept 2001]; see also CPLR 3211 [a] [7]).
7. Incapacity
Respondents also move under CPLR 3211 (a) (7) to dismiss petitioner's claim of decedent's incapacity. The Court grants this branch of respondents' motion and holds that petitioner's claim that decedent was incapacitated is entirely without merit.
"A person's competency to engage in a transaction is presumed and the party challenging such bears the burden of proving incompetence (Matter of Nealon, 57 AD3d 1325, 1327 [3d Dept 2008]). "[I]t must be demonstrated that the individual was incompetent at the specific time of the challenged transaction, i.e., he or she was so affected as to render him or her wholly and absolutely incompetent to comprehend and understand the nature of the transaction" (id. [internal brackets, quotation marks, and citations omitted]).[FN9]

In this matter, the turnover petition does not contain any specific factual allegations of decedent's alleged incapacity or diminished physical or mental capacity. The Court does not construe the assertion therein of decedent's ailing health to mean that he was physically or mentally incapacitated (see NYSCEF Doc No. 59, petition ¶ 51).
What's more, the turnover petition does not squarely allege that decedent was incapacitated or that he had diminished competency during the relevant time period when he opened the bank accounts until his death in 2020. Moreover, this proceeding does not concern decedent's testamentary capacity given that his will was admitted into probate in 2020 in an uncontested probate proceeding.
To the extent petitioner asserts in the turnover petition that decedent allegedly lacked capacity or was incapacitated to some extent, that claim is unavailing (see Matter of Nealon, 57 AD3d at 1327; Matter of Gifford, 28 AD3d 953, 955 [3d Dept 2006], lv dismissed and denied 7 [*14]NY3d 799 [2006]; compare Matter of Rita R., 26 AD3d 502, 503 [2d Dept 2006]). Therefore, petitioner's claim of decedent's incapacity is dismissed (see CPLR 3211 [a] [7]).
C. Respondents' Motion to Strike Paragraph 45 of the Turnover Petition and Exhibit U Appended Thereto as a Settlement Communication
Next, respondents move to strike paragraph 45 of the turnover petition and Exhibit U appended thereto as being inadmissible pursuant to CPLR 3024 (b) and 4547.[FN10]
Exhibit U is an email correspondence, dated December 20, 2022, that was sent from respondents' counsel to only petitioner's counsel. The email is entitled "Estate of John Catapano" in the subject line and it contains a PDF attachment of a settlement agreement (NYSCEF Doc No. 59, petition ¶ 51, exhibit U).
Respondents' argument in striking the email correspondence is premised on it constituting evidence of a possible settlement, which they contend makes the email inadmissible (see CPLR 3024 [b]; 4547). Inasmuch as none of the exceptions in CPLR 4547 apply here, respondents urge that petitioner is improperly attempting to establish that the alleged conversion, when the statute of limitations began to accrue, occurred during the attorneys' settlement negotiations as a basis for ascribing liability on their part. The Court finds this contention persuasive.
Petitioner concedes as much in opposition, asserting that the email correspondence at issue was appended to the petition to establish the date of conversion for purposes of determining when the statute of limitations began to accrue; therefore, the email should be admissible for that purpose. Petitioner urges that his demand to return the allegedly converted bank funds was made December 20, 2022. The Court rejects petitioner's proposition in this regard.
Pursuant to CPLR 4547, evidence of offers or promises to settle a claim are inadmissible when offered as proof of liability or the invalidity of a claim, especially where the statements arose in the context of compromising a disputed claim. However, communications stating a party's position without any proffer of settlement are admissible. Admissions of fact made in connection with settlement negotiations are also admissible (see First Acquisition Funding LLC v 1ST All. Lending, LLC, 40 Misc 3d 1230[A], *9 [Sup Ct, New York County 2013], affd 121 AD3d 429 [1st Dept 2014]).
Respondents' attorney states in the email correspondence that respondents are "willing to settle" and that they are "not willing to meet [petitioner's] additional demands" (NYSCEF Doc No. 59, petition ¶ 51, exhibit U). Further, respondents' attorney attached a proposed settlement agreement (global release), stating unequivocally in the email that she has "[a]ttached . . . a Settlement Agreement and Receipt and Releases" for petitioner to execute, that the respondents will "also sign" it, and that the agreement "terms set forth are final terms" (id.). Respondents' attorney concludes the email correspondence by asking "[l]et me know [petitioner's] position" (id.).
Notwithstanding the fact that the December 2022 email correspondence was a predispute [*15]communication before petitioner filed the discovery petition in March 2023, the Court holds that the email in question is an unequivocal formal settlement offer (compare Alternatives Fed. Credit Union v Olbios, LLC, 14 AD3d 779, 781 [3d Dept 2005]; Flink v Smith, 66 Misc 3d 1229[A], *7-8 [Sup Ct, Albany County 2020]). Further contrary to petitioner's contention, the Court concludes that the email correspondence from respondent's attorney to petitioner's attorney, dated December 20, 2022, constitutes a settlement communication. A reference to any purported denial statement is inadmissible and therefore must be stricken from the turnover petition. Accordingly, the Court strikes paragraph 45 of the turnover petition and Exhibit U appended thereto as inadmissible (see CPLR 4547; Gottbetter v Crone Kline Rinde, LLP, 162 AD3d 579, 580 [1st Dept 2018]).
In fact, there is nothing in the record reflecting an actual demand by petitioner (or his attorney) for returning the bank funds at issue (compare Matter of Dunbar, 49 AD2d 858, 859 [1st Dept 1975]; Matter of Spira, 59 Misc 3d 1227[A], *1 [Sur Ct, Queens County 2018]). The Court points out that petitioner overlooks that such email correspondence, in and of itself, is not an actual demand from him.
More importantly, the record is devoid of petitioner formally demanding that respondents return the funds that they allegedly withdrew from the bank accounts in question, given that the email was sent by respondents' attorney, not petitioner or his attorney. In fact, the petition, too, is devoid of whether petitioner himself or his attorney ever made such a demand from respondents and/or their attorney, at any point in time. The lone submission annexed to the petition as "Exhibit U" does not present a scenario where there was an exchange of emails between petitioner's counsel and respondents' counsel regarding a formal demand from petitioner (see e.g. Nineteen Eighty-Nine, LLC v Icahn, 96 AD3d 603, 606 [1st Dept 2012]).
Of course, the issue of whether the subject email correspondence constitutes a demand is essentially made irrelevant by the Court's holding on the timeliness and tolling of petitioner's conversion claim (see Discussion of tolling of petitioner's conversion claim, infra at 9-12). There is no indication that petitioner's withdrawal of the funds from the joint Connecticut bank accounts was unlawful, and the record contains no evidence that a demand or a refusal to return the banj funds was ever made by petitioner (see Matter of Asch, 164 AD3d at 788; Matter of Rausman, 50 AD3d at 910).
Thus, the Court grants that branch of respondents' motion to strike paragraph 45 of the turnover petition and Exhibit U appended thereto. Those items are stricken from the petition in their entirety. 
D. " Documentary Evidence" within the Intendment of CPLR 3211 (a) (1)
As an initial matter, the Court notes that respondents did not squarely move under CPLR 3211 (a) (1) to dismiss the turnover petition based upon documentary evidence. To the extent that a liberal reading of their moving papers suggest that they pursue dismissal based upon this ground, the Court denies respondents' purported application to dismiss the petition based on the documents adduced in support of their dismissal motion (see id.)
"Under CPLR 3211 (a) (1), a dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law" (Leon v Martinez, 84 NY2d 83, 88 [1994]; accord Matter of Baugher, 98 AD3d at 1112). "A motion to dismiss pursuant to CPLR 3211 (a) (1) will be granted only if the documentary evidence resolves [*16]all factual issues as a matter of law, and conclusively disposes of the [petitioner's] claim" (Matter of Walker, 117 AD3d 838, 839 [2d Dept 2014] [internal quotation marks and citations omitted]).
"[A]ffidavits and deposition testimony are not 'documentary evidence' within the intendment of a . . . motion to dismiss" predicated on CPLR 3211 (a) (1) (Fontanetta v John Doe 1, 73 AD3d 78, 86 [2d Dept 2010] [emphasis added]). "[T]o be considered 'documentary,' evidence must be unambiguous and of undisputed authenticity" (id. at 86).
Here, the documentary evidence submitted by respondents in support of the motion does not resolve all of the numerous factual issues as a matter of law and conclusively dispose of petitioner's claims of conversion and unjust enrichment (see Matter of Baugher, 98 AD3d at 1112; compare Matter of Perelman, 123 AD3d 436, 436 [1st Dept 2014], lvs denied 5 NY3d 905 [2015]). The affirmations and affidavits submitted by respondents and the transcripts of their deposition testimonies do not qualify as documentary evidence; hence, the Court declines to rely on those items to eliminate several factual questions that are enumerated below (see Matter of Walker, 117 AD3d at 839; Fontanetta v John Doe 1, 73 AD3d at 85; Discussion of application of state banking laws and related factual issues, supra at 21-22).[FN11]
The other documentary evidence submitted by respondents, including copies of bank statements, do not utterly refute the factual allegations set forth in the petition or conclusively establish a complete defense as a matter of law (see Matter of Linder, 153 AD3d at 1345).
E. Application of State Banking Laws and Related Factual Issues
Respondents urge that the banking laws of Connecticut apply to the joint accounts at issue and that petitioner "lacks legal standing" under the laws of that state to have the bank funds turned over to the estate. Petitioner contests as much, arguing that New York banking laws should apply to this matter. The Court declines to reach that issue at this juncture.
The issue of whether the banking laws of New York State or Connecticut as to the bank accounts in question is not properly before the Court on this motion to dismiss given the insufficient record (see Banking Law § 675 [FN12]
; Conn. Gen. Stat. § 36a-290). Furthermore, the issue of ownership upon the death of a joint account holder is a factual one. Notably, a person [*17]challenging the survivor's right to ownership of the balance in the account must overcome the presumption with clear and convincing evidence under the laws of either New York or Connecticut (see Matter of Grancaric, 91 AD3d 1104, 1105 [3d Dept 2012]; Geci v Boor, 181 A3d 94, 99 [Conn App Ct 2017]). In light of the current procedural posture of this case and the scant record, it is premature to determine whether petitioner has met his burden of rebutting the presumption by clear and convincing evidence that the bank accounts were of convenience and the right to ownership thereof.
The parties' contentions regarding whether the bank accounts are convenience or joint accounts, the ownership of the joint bank accounts, and the right to survivorship inherently involve factual issues that cannot be fully resolved here in the context of a motion to dismiss. At oral argument, counsel indicated that additional discovery will likely be needed, including potential depositions of nonparties. Respondents' motion raises various factual issues that are beyond the scope of a motion to dismiss and would be more appropriate for a CPLR 3212 motion for summary judgment (see id.; Matter of Najjar [Sanzone], 195 AD3d 1483, 1484-1486 [4th Dept 2021]).
The respective affidavits of each of the respondents, while facially persuasive, are not determinative, because the allegations therein and respondents' credibility are untested. Hence, the Court declines to convert respondents' motion to dismiss into one for summary judgment, pursuant to CPLR 3211 (c), based on the presently constructed record (see generally Russo v Macchia-Schiavo, 72 AD3d 786, 787 [2d Dept 2010]; Mann v Rusk, 14 AD3d 909, 910 [3d Dept 2005]).
Petitioner, in opposition, asserts that Valentini's examination testimony contradicts her affidavit submitted in support of this motion since it reveals that she is unaware of decedent's intention in creating the joint bank accounts. Petitioner also asserts that respondents testified that they do not know the source of the $800,000 funds that was deposited into the accounts at issue. Also, petitioner disputes respondents' allegation that the coexecutor, John Aaron Catapano, withdrew any money from one of the bank accounts in or around September 2019. Petitioner claims that Valentini, as the coexecutrix, did not initiate any legal proceedings against the coexecutor because she did not have "clean hands" and that she was aided by Hirsh in converting the $800,000 from the joint bank accounts (NYSCEF Doc No. 98, supplemental brief ¶ 6-10).
In the Court's view, while petitioner's claims of conversion and unjust enrichment have survived a motion to dismiss during this early pleading stage, the Court is unable to determine critical factual issues on this limited record — i.e., (i) whether decedent had a donative intent when he opened the joint bank accounts with respondents; (ii) whether the bank funds may constitute an inter vivos gift to respondents; (iii) whether the subject bank accounts at issue were opened as a matter of convenience or as joint accounts; and (iv) whether petitioner has met the clear and convincing burden standard elucidated above in connection with the joint bank accounts.
Resolution of these issues necessarily entail factual determinations that are not appropriate on a pre-answer motion to dismiss. Existing factual issues warrant further development of the record. Additional discovery is needed to resolve material issues of fact. The Court cannot decide those issues, as a matter of law, at this time without the benefit of a more sufficiently developed record (see Twitchell Tech. Prods., LLC v Mechoshade Sys., LLC, 227 AD3d 45, 56 [2d Dept 2024]; Wright v City of New York, 223 AD3d 547, 548 [1st Dept 2024]).
The remaining branches of respondents' motion — namely, that they jointly and severally [*18]compensate decedent's estate for any property that was disposed of and that respondents be awarded attorneys' fees, costs, and disbursements in defending this proceeding — were not briefed in the moving papers. The Court declines to reach those issues and denies the foregoing relief sought in respondents' motion to dismiss. Hence, that branch of respondents' motion requesting an award of attorneys' fees is denied (see Matter of Wallace, 68 AD3d 679, 680 [1st Dept 2009]; Matter of Garrasi, 29 Misc 3d 822, 830-831 [Sur Ct, Schenectady County 2010]).
To the extent not specifically addressed herein, the parties' remaining contentions have been examined and are either rendered academic or without merit. Any other relief requested that is not squarely addressed herein is denied based on this decision. Accordingly, it is hereby:
Ordered that the instant motion (mot. seq. no. 1) of Respondents ANGELINA C. VALENTINI and VICTORIA HIRSCH is granted in part and denied in part, as is more specifically set forth in this Decision; and it is further
Ordered that Petitioner ANTONIO P. CATAPANO's claims of conversion and unjust enrichment as alleged against the Respondents herein in the turnover petition shall be sustained and survive the pleading stage; and it is further
Ordered that Petitioner ANTONIO P. CATAPANO's claims of fraud, breach of fiduciary duty, undue influence, and incapacity are dismissed with prejudice; and it is further
Ordered that that branch of the Respondents' motion to strike paragraph 45 of the turnover petition and Exhibit U appended thereto is GRANTED; and those items are accordingly stricken from the petition and this proceeding; and it is further
Ordered that all other branches of the Respondents' motion are denied; and it is further
Ordered that Respondents ANGELINA C. VALENTINI and VICTORIA HIRSCH shall promptly file their responsive pleading, in proper form, as soon as practicable; and it is further
Ordered that the attorneys shall appear for a preliminary conference before the undersigned on Friday, April 25, 2025, at 2 p.m.
The foregoing constitutes the Decision and Order of this Court.
Dated: March 20, 2025
Carmel, New York
E N T E R:
HON. ANTHONY R. MOLÉ
SURROGATE

Footnotes

Footnote 1:Additionally, respondents also move for such other associated relief in their motion, including denial of petitioner's request that the respondents turn over certain assets, that they be required to jointly and severally compensate the estate for any property was disposed of, and that respondents be awarded attorneys' fees, costs, and disbursements in defending this proceeding.

Footnote 2:Exhibits 2 to 4 are the affidavits of the Respondents, an affidavit of nonparty Josylda Kopke, and the affirmation of Hirsch.

Footnote 3:The Court also takes judicial notice of the filings in these proceedings on NYSCEF (see Kazantzis v Cascade Funding RM1 Acquisitions Grantor Trust, 217 AD3d 410, 411 [1st Dept 2023]).

Footnote 4:Decedent's will is dated April 17, 2007.

Footnote 5:
 The first phase in a discovery and turnover proceeding is inquisitorial. It directs that an inquiry be made where respondents are examined (see SCPA 2103 [1], [3]; Matter of Ziv, 80 Misc 3d 973, 977-978 [Sur Ct, Dutchess County 2023]; see generally Matter of Wang, 2016 NY Slip Op 30715[U], *4 [Sur Ct, New York County 2016]; Matter of Arman, 2010 WL 8758275, *1-2 [Sur Ct, New York County 2010]).

Footnote 6:Once the inquiry stage ends, the second phase involves a trial concerning the turnover of property to the estate as an estate asset — which, as done here, can be initiated by the filing of a turnover petition (see Matter of Ziv, 80 Misc 3d at 978; Matter of Wang, 2016 NY Slip Op 30715[U], *4). The Court thus finds unavailing respondents' assertion that the discovery petition did not set forth the specific claims or causes of action that were subsequently asserted in the turnover petition.

Footnote 7:"Conversion is the unauthorized assumption and exercise of the right of ownership over another's property to the exclusion of the owner's rights. Where the property alleged to have been converted is money, it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner. Thus, conversion occurs when funds designated for a particular purpose are used for an unauthorized purpose" (Lemle v Lemle, 92 AD3d 494, 497 [1st Dept 2012] [internal brackets, quotation marks, and citations omitted).

Footnote 8:On March 20, 2020, Governor Cuomo signed Executive Order No. 202.8 in response to the public health crisis caused by the COVID-19 pandemic (see Executive Order [A. Cuomo] No. 202.8 [9 NYCRR 8.202.8]). "The Executive Order 'tolled' any 'specific time limit for the commencement, filing, or service of any legal action until April 19, 2020.' That toll was extended through several subsequent executive orders, the last of which remained in effect until November 3, 2020" (Murphy v Harris, 210 AD3d 410, 411 [1st Dept 2022], quoting 9 NYCRR 8.202.8 [ellipses omitted]). During the heightened crisis of COVID, Governor Cuomo issued a series of nine subsequent executive orders extending the suspension or tolling periods, eventually through November 3, 2020 — when any tolling periods would conclude. Notably, Executive Order (A. Cuomo) No. 202.72 (9 NYCRR 8.202.72), issued on November 3, 2020, reiterated that the "toll" would no longer be in effect as of November 4, 2020 (see Executive Order [A. Cuomo] No. 202.72 [9 NYCRR 8.202.72]; see Brash v Richards, 195 AD3d 582, 584-585 [2d Dept 2021]).

Footnote 9:Parenthetically, even "a diagnosis of progressive dementia, standing alone, does not create a triable issue of fact as to mental capacity" (Matter of Nealon, 57 AD3d 1325, 1327 [3d Dept 2008]; see Matter of Friedman, 26 AD3d 723, 725 [3d Dept 2006], lv denied 7 NY3d 711 [2006]).

Footnote 10:The Court presumes that respondents incorrectly refer to striking paragraph 22 of the turnover petition in their notice of motion and intended to cite paragraph 45 of the petition which references Exhibit U, as is reflected in counsel's memorandum of law and affirmation in reply.

Footnote 11:Parenthetically, the Interim Order directing supplemental briefing also directed respondents to submit copies of the signature cards that are referenced in the Affidavit of Josylda Kopke dated November 18, 2024 (NYSCEF Doc No. 76, Kopke aff, ¶ 13-18). Notably, respondents failed to include this critical submission in their initial moving papers and only adduced it after the Court's written directive. The Court declines to rely solely on those signature cards that were created when the bank accounts were opened as a firm basis to conclude that such documentary evidence establishes a complete defense to the turnover petition, thus warranting dismissal (see Matter of Walker, 117 AD3d 838, 839 [2d Dept 2014]).

Footnote 12:Generally, under Banking Law § 675, "[w]hen two or more persons open a bank account, making a deposit of cash, securities, or other property, a presumption of joint tenancy with right of survivorship arises" (Matter of New York Community Bank v Bank of Am., N.A., 169 AD3d 35, 38 [1st Dept 2019], lv denied 33 NY3d 908 [2019]).